# The Mayor *against* Randolph.

Where a municipal corporation act under an authority to regulate and grade the ascents and descents of streets, it is error in an action on the case against them for obstructing the flow of water, to submit to the jury whether their object was to benefit the private property of the corporation: the only question is, whether they possessed the authority which they exercised.

ERROR to the District Court for the city and county of *Philadelphia*.

The action in the court below was in Case brought by George F. Randolph and Richard Randolph, executors of Edward Randolph, deceased, against the Mayor, Aldermen and citizens of Philadelphia. The plaintiffs in their narr. averred that they were seised and possessed of a lot of ground between Market and Filbert streets and Schuylkill Front and Second streets, and the defendants stopped up a water-course called " Minnow Run," which used to flow over their lot, and from thence into a lot of the defendants and the river Schuylkill, whereby the plaintiffs' lot was overflowed and dammed up.

The plaintiffs proved the ownership of the lot, and also that in ancient times this run originated near Bush-Hill, and after passing over intervening grounds flowed through plaintiffs' lot and thence over a lot belonging to the city corporation into the Schuylkill.

[The Mayor v. Randolph.]

Part of it was first diverted in 1827 by a common-sewer made by the city along Arch street into the river. In 1826 Front street was ordered by the city to be levelled to the regulation of the city, and was reported by the city commissioners as having been carried into effect: but a culvert or archway was left by which the remaining water of the run passed into the river. In 1835, the same year in which a gas-house was built on the defendants' lot, a resolution of councils ordered the city commissioners to stop up the opening in Front street, and also in Second and Third streets. The effect of this was to produce a dam or pond in the plaintiffs' lot of the depth of several feet.

The plaintiffs offered in evidence an ordinance of the corporation of the city, providing for the construction and management of the Philadelphia Gas Works, passed 21st of March 1835. The defendants objected to this evidence, but the court admitted it, and the defendants excepted. The 7th section of the ordinance was then read:

"Sect. 7. That the lot of ground owned by the corporation of Philadelphia, bounded east by Front street, north by Filbert street, south by High street and west by the river Schuylkill, be, and is hereby appropriated for the location and use of the Gas Works aforesaid; for which a rent of $500 per annum shall be charged to the works: Provided, that the Select and Common Councils may at any time reclaim so much of said lot as may in the opinion of the trustees aforesaid, not be necessary for the accommodation of the works herein provided for."

The Judge charged the jury as follows:

If you find from the evidence that Minnow run was a natural water-course, which has from time immemorial flowed through or near the lot now owned by the plaintiffs, and emptied into the Schuylkill river, crossing in its way Schuylkill Front street, and passing through the lot on which the Gas Works have been erected; that it was stopped at Front street by the defendants, and left in this condition, to the injury of the plaintiffs, by the accumulation of the water, you will then inquire for what purpose this obstruction was made. And on this point I state to you that if the water-course in question was stopped for the purpose of improving the highway which is carried over it, the act was justifiable, and your verdict should be for the defendants. But if, from the evidence, you are satified that the stoppage was not with the view of improving the highway, and was altogether unnecessary for that purpose, and on the contrary, the purpose was to render the occupation of the lot by the Gas Works more convenient and valuable, and to effect this object, and this only, the stoppage was ordered and done, you should find for the plaintiffs.

Errors assigned:

1. The court erred in permitting the plaintiffs to give in evi-

[The Mayor v. Randolph.]

dence the ordinance of 21st of March 1835, establishing the Gas Works.

2. In charging the jury that the plaintiffs could maintain this action.

3. In charging the jury that they could inquire for what purpose the obstruction was made.

4. In charging the jury that if they were satisfied from the evidence that the culvert was stopped not with the view of improving the highway, and was altogether unnecessary for that purpose, and on the contrary the purpose was to render the occupation of the lot by the Gas Works more convenient and valuable, and to effect this object, and this only, the stoppage was ordered and done, they should find for the plaintiffs.

*Olmsted* and *Meredith*, for the plaintiffs in error, cited Act of 2d of April 1790, (1 *Sm. L.* 526); *City Ordinances of 9th of May* 1804; *Green* v. *The Borough of Reading*, (9 *Watts* 382); 2 *Hill's S. Car. Rep.* 572; 12 *Mod.* 387; 5 *Johns.* 112; 12 *Johns.* 493; 11 *Johns.* 132; 15 *E. C. L.* 137; 2 *Johns.* 462; 7 *Watts* 215.

*Williams*, *contra*, referred to 9 *Went. Prec.* 179; 4 *Bing.* 183; *City Ordinance of August 6th* 1814; 15 *E. C. L.* 133.

The opinion of the Court was delivered by

SERGEANT, J.—The only question that could arise on the pleadings and evidence in this case was, whether the defendants had authority for what they did under the Acts of Assembly in relation to the powers of the city corporation and the ordinances enacted in pursuance of them. If they had authority to direct the run to be stopped for the purpose of pitching, grading and levelling the streets and regulating the ascents and descents of the streets and water-courses of the city, they were justified in what they did. *Green* v. *The Borough of Reading*, (9 *Watts* 382). The motives of the corporation in doing so cannot be examined into. Whether they were to promote the wishes of one man, or set of men, or to thwart others, or whether it was to benefit the corporation property or not, it is sufficient, if what they did was within the scope of their legal powers. It is evident, that inquiries into motives would lead into a wide field of surmise and conjecture: and as no motives are legally assignable to a law-maker beyond what are apparent on the face of his enactments, it would be as useless as it is hazardous. If one in the exercise of an authority deviates from the authority given by law, by doing more than is permitted, or doing it otherwise than he is directed, he may be amenable for such unauthorized acts, be his motives what they may; but as long as he acts within the sphere of his authority the motives or the cause of his doing so are in a legal point of view not examinable. This is the common principle in relation

[The Mayor v. Randolph.]

to a malicious prosecution, if the party had probable cause that fully justifies him, however malicious his motives may have been. So far is the principle carried, that if one has a legal and an illegal warrant, and arrests by virtue of the illegal warrant, yet he may justify by virtue of the legal one; for it is not what he declares, but the authority which is his justification. *Doctor Greenville* v. *College of Physicians*, (12 *Mod.* 387). If one distrains for an unjustifiable cause, yet when he comes to avow he need not insist on the cause for which he had distrained, but may justify for any lawful cause; the cause for which he distrained is not traversable. *Fitz. Avowry* 332; 3 *Co.* 26.

The court below, we think, erred in leaving it to the jury to say whether the object of the stoppage was with the view of improving the highway or to render the occupation of the Gas Works more convenient and valuable, even had there been any evidence on the subject, which does not appear. The only question was whether the defendants had authority to do the act complained of, and if they had they stood clearly justified.

For the reasons above explained, the evidence offered by the plaintiff, which was excepted to, was inadmissible.

Judgment reversed, and a *venire de novo* awarded.