JOSEPH HATCH v. VERMONT CENTRAL RAILROAD COMPANY.
FREDERICK S. WHITCOMB v. SAME.

*Railroad Companies. Damages.*

Railroad Companies are not liable for necessary consequential damages accruing to premises not taken by them for the prudent construction and operation of their roads.

But they are liable, for diverting a stream of water from its natural course, to the injury of a neighboring proprietor.

The question, how far a railroad company is liable upon general principles, or under the constitutional provision, for making compensation for private property taken for public use, and aside from the conditions of their charter, for damages occasioned to land not taken by them for the use of their road, considered.

TRESPASS ON THE CASE. These two cases involved very nearly the same general principles, with some difference of application to the circumstances of each.

The claim of Hatch was for consequential damage to premises of his, lying near the railroad of defendants; but not taken for the purposes of the road. Plea, general issue, and trial by jury.

On trial, the plaintiff offered in evidence certain deeds of conveyance to himself of the premises, situate in Burlington, described in the declaration, dated July 13, A. D. 1839; but his title was not controverted. The plaintiff then offered testimony tending to prove, that he entered into possession of the premises, under his deeds, in 1839, and has continued in the occupation and possession thereof ever since; and that soon after he purchased the same, he erected thereon a Bakery, barn and out buildings, and a dwelling-house of brick, with a store in the basement story,—and has carried on the baking and mercantile business there since,—and has done an extensive business up to about the month of August, 1850. That his dwelling-house and store is situated on the corner north of Main and west of Water streets, upon the line of the same; and that his bakery fronts upon Water street; and previous to the construction of the embankment, and making of the excavations, by defendants, in the streets in front of his premises, his store, bakery and other portions of his land were accessible from the streets, with teams, carriages and persons, and that he enjoyed the free and uninterrupted use of the streets in connection with his premises, and that the water, caused by rains and melting of snows, passed from and by his premises in the streets, without injury to his store and other buildings. That persons transacting business at his store and bakery, could safely hitch their teams in front of the same,—and that the plaintiff, also, could safely drive to and from his premises, with horses and carriages. That the plaintiff had made and received great gains and profits from his business previous to the construction of the said embankments by the defendants.

The plaintiff also offered evidence tending to prove, that defendants, about the month of August, 1850, constructed an embankment, of about three and one-half feet in height, across Main and Water streets, in front of plaintiff's store, bakery and dwelling-house, running in a north westerly and south easterly direction, and within some three or four feet of plaintiff's store. That Water street runs north and south, and Main street east and west,—that defendants made ditches or excavations, in the streets near the plaintiff's premises, and at either end or side of the embankment, of from six inches to about three or four feet in depth; and that they have kept and continued the same there ever since.

That the defendants, in the month of September, or October, 1850, laid a railroad track upon the embankment, which remains within ten feet of the corner of plaintiff's store and dwelling-house, and upon a very high grade.

The plaintiff also offered evidence tending to prove, that by reason of the action of the embankment, it has caused the water, upon the occasion of showers, and melting of the snow, to flow into his store, and other rooms in the basement story, which has done considerable damage to the same, and to his merchandise therein,— and that the streets are so obstructed that teams cannot safely approach his premises for the purpose of loading or unloading, and his use and advantages of the streets are nearly spoiled and destroyed, both for his bakery and store, and also for all other purposes connected with the occupation and enjoyment of his premises, and that persons cannot safely hitch or leave teams near the premises, while transacting their ordinary business.

The plaintiff also offered evidence tending to prove, that defendants commenced running their engines and cars upon their track on the said embankment in front of his premises, in September or October, 1850, and have so continued to do ever since,—that they run their cars a great number of times each day, and frequently suffer them to remain blocking up the streets in front of his dwelling-house, store and premises, for a considerable time, which greatly disturbs the plaintiff in the use and enjoyment of his premises, and prevents his customers from coming to the same,—and also by reason of the construction of the embankment and excavation, and running of the engines and cars thereon by the defendants, the plaintiff's premises are greatly depreciated and ren-

dered nearly worthless, and his customers are obliged to go to other places to purchase heavy articles on account of the obstructions above mentioned.

The defendants offered in evidence the act of the General Assembly of the State of Vermont, incorporating said Railroad Company, and the several acts in addition thereto, with evidence tending to prove, that the defendants in the construction of said railroad, constructed it with as little injury to the plaintiff's premises as was consistent with the convenient grade of said railroad and public use of said highway.

The county court, March term, 1850,—PIERPOINT, J. presiding,—decided that the plaintiff was not entitled to recover, and directed a verdict for defendants.

To which decision and direction the plaintiff excepted.

The claim of Whitcomb was based on the facts, that defendants had built their road over his land, and across a stream running through it, and had built no proper culvert or sluice for the stream; but had diverted the stream from its course, to the plaintiff's injury. Plea, general issue, and trial by jury.

The plaintiff, on trial, offered in evidence a deed, from William J. Freeman and wife, dated the 15th day of March, A. D. 1850, and also a deed from Levi Whitcomb, dated March 9, 1848, both of which deeds were executed to plaintiff as grantee of lands in Richmond. The plaintiff also proved, that the defendants, in the year 1849, constructed their railroad through the town of Richmond, and that the lands, conveyed by the foregoing deeds, lay adjoining to, and on both sides of said railroad as constructed.

The plaintiff also offered evidence tending to prove, that Onion river, in high water, was accustomed to overflow a portion of the premises previous to the construction of said railroad, and the waters thereof to flow over the meadow of the plaintiff, north of said road, as constructed, and that some portion of plaintiff's land lying south of said road, and between it and said river, was lower than the land near the river, and therefore the water, so overflowed, did not flow back into the river by the course it came; but had previously to the construction of said road, passed over the plaintiff's low land north of said road, and off by the way of a brook adjacent thereto.

That defendants built a wooden culvert through their road in

1849, on and adjoining the lands the plaintiff had so bought of the Freemans, for the water, so coming from the river, to pass through; but that this culvert, in a freshet of July, 1850, broke down and filled up, whereby the water stood upon plaintiff's land on the south side of said road, and injured the plaintiff's land and crops thereon growing. The evidence also tended to prove, that the freshet of July, 1850, was a remarkably high freshet, and but one or two previous ones had come up to it within the memory of the oldest living man, and that this freshet overflowed the railroad in the vicinity of the plaintiff's land, and carried away portions of the defendants' road. `Also, that at the time of the execution of the deed from Levi Whitcomb to the plaintiff, the said road was located in a different place, and at a considerable distance from where it was afterwards located and made across the lands conveyed by said Levi to the plaintiff.

The defendants offered in evidence a deed, from said Freeman and wife to them, dated July 12, 1849, and also a deed from said Levi Whitcomb to them, dated September 22, 1849, and also their act of incorporation, and the location of their said road through the town of Richmond. No question was made, but that said road was constructed according to the last location offered in evidence by the defendants. The evidence of the plaintiff tended to prove, that three-fourths of the injury complained of by the plaintiff was done on the land bought by plaintiff of the Freemans, and the other quarter on land bought by plaintiff of Levi Whitcomb.

The defendants also offered evidence tending to prove, that plaintiff witnessed the deed from Levi Whitcomb to the defendants, and had knowledge of its contents, and made no objection.

On this evidence the defendants insisted that plaintiff was not entitled to recover, and requested the court so to charge the jury. The court refused so to do, and instructed the jury that, as to the injury done the land the plaintiff had purchased of said Levi Whitcomb, the defendants were responsible, &c. The jury under these instructions returned a verdict for plaintiff. To the refusal of the court to charge as requested, and to the charge as given, defendants excepted.

The jury, under the instructions and charge of the court, were not permitted to give damages for the injury to all the plaintiff's land; but were restricted to the land purchased of said Levi, being

about one-fourth of plaintiff's land.   To which ruling and charge of the court the plaintiff excepts.

*D. A. Smalley, L. Underwood* and *E. R. Hard* for plaintiff Hatch.

The case presents the following questions, viz:

1. Whether the Legislature have any constitutional authority to authorize the defendants to so construct their road, as to cause the injury to the plaintiff set forth in the declaration, and proved on the trial, without rendering the defendants liable therefor.   2. Whether they have done this.   3. What injuries the plaintiff is entitled to recover for.   4. What is the plaintiff's remedy.   5. Whether the case should not have been submitted to the jury upon the testimony.

I. The Legislature have no constitutional authority to take, or authorize to be taken, or materially to damage, or authorize to be damaged, private property, without making an adequate compensation therefor.   Constitution of Vt., Part 1, secs. 2–9.   *Gardner* v. *Trustees of Newburgh,* 2 J. Ch. R. 162.   *Bloodgood* v. *M. & H. Railroad Co.,* 18 Wend. 9.   3 Hill 567.   *Wilkinson* v. *Leland,* 2 Pet. 657.   2 Kent's Com. 38–9.   *Barron & Craig* v. *Baltimore,* 2 Am. Jurist 203.   *Stevens* v. *Middlesex Canal Co.,* 12 Mass. 466.   *Broughton* v. *Carter,* 18 Johns. R. 404.

II. The charter authorizes the defendants to construct their road, and to enter upon lands for that purpose, and provides for compensation for lands entered upon and taken; but it does not authorize them so to construct their road as to injure the property or lands not entered upon and taken,—hence if the defendants in building their road do injury to property not actually taken, they cannot by a forced construction of the charter, be exonerated from liability.

The defendants have no right to interfere with private property, except so far as the charter expressly authorizes them so to do. And beyond the express authority of the charter, they stand upon the same ground as an individual acting for himself,—and the maxim, "*Sic utere tuo ut alienum non lædas,*" applies.   It was not contemplated by the Legislature, that the construction of the road would necessarily destroy the value of property not actually taken, and hence the Legislature only authorized the defendants to interfere with private property so far as was absolutely necessary to the

DECEMBER TERM, 1852. 55

Hatch v. Vt. Central R. R. Co.    Whitcomb v. Vt. Central R. R. Co.

work, and beyond this leaving private rights where they found them.

III. We insist, that any injury suffered by the plaintiff, which would entitle him to an action on the case, as for a *nuisance*, if caused by an individual, entitles him to an action against the defendants.

These are, *building the embankment, and digging the trenches, turning the water into the plaintiff's cellar, destroying his way by which he passed to and from the street, making obstructions in the street by leaving cars standing an unreasonable length of time, by making loud offensive and unnecessary noises, &c.* Lawrence v. Great North. R. W. Co., 4 Eng. L. & Eq. R. 265. Regina v. Eastern R. W. Co., 42 E. C. L. 706. Fletcher v. Auburn & Syrac. Railroad Co., 25 Wend. 462. Seneca R. Co. v. Auburn & Rochester R. Co., 5 Hill 170. Hooker v. N. Haven & N. Hampton Co., 14 Conn. 146. Drake v. Hud. R. R. Co., 7 Barb. 508. Barron & Craig v. Baltimore, 2 Am. Jurist 203. The First Baptist Church, &c. v. Sch. & Troy R. R. Co., 5 Barb. 79. Soltau v. De Held, 9 E. L. & Eq. 104.

They are not excused because the embankment is in the highway.

They have no right to cross highways except upon the condition, that they *restore them to their former condition, as near as may be, to the acceptance of the selectmen.* This the defendants did not claim, and hence the charter does not justify them. Bloodgood v. M. & H. R. R. Co., 18 Wend. 9. Spencer v. L. & B. R. R. Co., 11 E. Ch. R. 392. Watkins v. Great No. R. W. Co., E. L. & Eq. 179. Reg. v. Birmingham & G. R. R. Co., 42 E. C. L. 565. Reg. v. Scott et al., 43 E. C. L. 858. Miller v. Auburn & S. R. R. Co., 6 Hill 62.

IV. The compensation clause in the charter furnishes no mode of redress, and the plaintiff is therefore entitled to this action for damages; and the Legislature could not take it away if they would. Constitution of Vt., Part 1, sec. 4. Hooker v. N. H. & N. H. R. Co., 14 Conn. 146, and cases above cited.

V. In view of the case the defendants would be liable for any injury to plaintiff, resulting from improperly or negligently constructing their road and turning the water into plaintiff's cellar,—and the plaintiff had a right to go to the jury on the testimony,—on the

question whether the defendants had conducted the work properly, doing no unnecessary damage.

*J. Maeck* for defendants.

The declaration shows, that the defendants were lawfully exercising their rights under their charter, and neither the declaration alleges, nor the matter offered in evidence had any tendency to prove, that in so doing they conducted with any wantonness, or negligence, or unskillfulness. Such being the case, we contend, that though the plaintiff's property may have been consequentially injured in value, by reason of the defendants' building their road in the immediate vicinity of his premises, yet it is considered in law as a *damnum absque injuria,* for which the law affords no redress.

The liability of defendants must be imposed either by their charter, or founded in the principles of the common law. The acceptance of a charter imposing liabilities beyond what the common law would impose, subjects the corporation. The charter only makes them responsible where they actually take the property of the party. See the 7th, 10th and 16th sections of the act, which are the only parts of the act making them responsible to the owners of property. By the 7th section they take the property into their own possession, without removal; by the 10th section they injure, or destroy it as it lies; and by the 16th they remove it, and convert it to their own use. In all these cases, there is an actual entry, and occupation of the *close.*

Only those cases where the thing itself is actually taken, have been considered as coming within the second article of the bill of rights.

Under the decision in *Livermore et al.* v. *Jamaica,* 23 Vt. 361, it would seem that cases mentioned in the 7th section of the act of incorporation do not come within the second article of the bill of rights.

The common law affords no redress to plaintiff. It is not every damage, the cause of which may be traced to the act of another, that renders that other responsible. Though the act may be the primary cause of the damage, and the damage may result from the act, yet if the party in doing the act was in the reasonable exercise of his right, and conducts without malice, negligence, or unskill-

fulness, he is not responsible for any damage which may be occasioned to another.

Let us examine the application of the above principle .in two classes of cases.  1.  Where the individual alone is to be benefitted by the act.  2.  Where the public, as well as individuals, or corporations, are to be benefitted by the act.

And first, where the individual receives the whole benefit.  In *Panton* v. *Holland*, 17 Johns. 99, WOODWORTH, J. in delivering the opinion of the court, said, " On reviewing the cases, I am of "opinion, that no man is answerable in damages, for the reasona-"ble exercise of a right, where there is no just ground for the "charge of negligence, or unskillfulness, and where the act is not "done maliciously."  And he cites, *Platt* v. *Johnson & Rood*, 15 Johns. 213.  2 Rolle's Abridg. 565.  1 Siderfin's R. 169.  *Clark* v. *Foot*, 8 Johns. 421.  *Thurston* v. *Hancock*, 12 Mass. 220, and adds, " that all these cases go upon the ground, that a possible dam-"age to another in the cautious and prudent exercise of a lawful "right is not to be regarded, and if a loss arise in consequence of "it, it is *damnum absque injuria.*"

Such is the whole current of authorities.  *Runnells* v. *Buller*, 2 N. H. 534.  *Livingston* v. *Adams*, 8 Cowen 175  *Lassala* v. *Holbrook*, 4 Paige 169.

Property taken for the purpose of constructing roads thereon, is property taken for public use ; and when it is changed from the particular manner of using it, for which it was originally taken, to another mode of like nature, as from a common highway to a turnpike, or railroad, the owner is not entitled to additional compensation.  *Chase* v. *Sutton M'f'c. Co.*, 4 Cushing 152.  *Pierce* v. *Southworth*, 10 N. H. 369.

And any subsequent change, either in the mode of making, repairing, or using the road, does not entitle the owner of land adjoining such highway to any damages, though such property is thereby consequentially injured.  Every purchaser of real estate, when he purchases it, or builds upon it, or appropriates it in any manner to use, does so, well knowing the paramount right of the government to make new highways, or alter, or improve old ones, or allow new modes of passing over them, in any way they may deem expedient, and if they exercise due care in so doing, and can do so without touching any portion of his property, though they may consequen-

tially injure its value; yet it is *damnum absque injuria*, and the law affords him no remedy in damages.   *Gowe & Co.* v. *Meredith*, 4 T. R. 794.   *Sutton* v. *Clark*, 1 Eng. C. L. 298.   *Boulton* v. *Crowther*, 9 E. C. L. 227.   15 Eng. C. L. 237.   12 M. & W. 324.   *Henry* v. *The Pittsburgh & Allegany Bridge Co.*, 8 Watts & S. 85.   1 Watts & S. 346.   *Shrunk.* v. *Schoolkill Nav. Co.*, 14 S. & R. 71.   *Commonwealth* v. *Fisher*, 1 Penn. R. 467.   3 Penn. R. 259.   6 Wharton 45.   6 Watts & S. 101.   9 Watts & S. 514.   7 Watts 460.   *Callendar* v. *Marsh*, 1 Pick. 418.   12 Mass. 466.   *Parker* v. *Boston & Maine R. R.*, 3 Cushing 113.   *Boston & Roxbury Mill Dam Co.* v. *Newman*, 12 Pick. 467.   *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn. 124.   *Lansing* v. *Smith et al.*, 8 Cowen 146.   3 Barbour 459.   2 Comstock 159.   15 Vt. 757.   4 U. S. Digest 430.   7 Peters 243, where it appears that the case cited from 2 Am. Jurist was reversed.

. The same counsel appeared in *Whitcomb* v. *Vt. Central R. R. Co.*, but as the principal authorities cited are fully discussed by the court, the briefs are not given in that case. ·

The opinion of the court was delivered by

REDFIELD, CH. J.   The very great importance of the principal question involved in this case, led, with great propriety, to an elaborate discussion at the bar, and the court have devoted all the time, at their command, to an extended examination of all the cases cited, and some others.   It is certain there is not, as yet, a perfect coincidence of views in regard to the rights, duties, and obligations of railway corporations, either in this country or in England.   But legislation is every day removing more or less of those uncertainties which have hitherto existed, and in some instances led to more or less of injustice, on the one hand or the other.

Legislation, in the infancy of all new undertakings, is more imperfect than it will be likely to be, when such projects are more fully matured.   This is especially applicable to our legislation in regard to railroads.   And the consideration, that many, perhaps most of the early charters granted in this State, were, at the time, regarded as experiments merely, and the roads not likely ever to be built, certainly not until extension of their charter limitations would be required, which would enable the legislature further to guard the rights of those likely to be injuriously affected by them,

has led to the granting of many·charters for railroads in this State, without all those restrictions,·and limitations, which are common in England, and in many of the·American States.   Hence it is not always easy to impose upon these companies the obligation to do, in all cases, what simple justice requires, and those who suffer essential, and sometimes, perhaps, ruinous injuries, or·rather damage, by their construction and operation, must be content to take the law as it is.   They must remember, that courts do not ordinarily make the law, upon this subject, more than others, but only take it as they find it, ready made to their hands, and apply it in such a manner, and to such cases, as it seems it was intended to reach.   If others are altogether omitted,·the·sufferers must be content to wait their time of deliverance, which, whether it comes, sooner or later, *or never,* is better to be thus delayed, than that the law should become the mere arbitrary discretion, and personal will of the judge, or the court, which has been regarded, as no bad definition of tyranny itself.

We have been led to these reflections partly, by what we may explain more fully hereafter, but chiefly to correct a very common misapprehension upon this subject, with parties certainly, and the profession sometimes, that if the law is not made always, to effect the most perfect justice, the fault is in its application, the law itself being always supposed perfect.

The important question in the case is, how far this railroad company is liable for consequential damage, to lands near their track, but no part of which is taken, by·them, for any purpose.   It seems to be conceded in the argument for the plaintiff,·and assumed·on all hands, that nothing in the company's charter, or in any general statute of the State, in force at the time, in terms made them liable for such damage.   Indeed, this assumption seems indispensable to enable the plaintiff to get along with his case.   For if such remedy is given by statute, it is probably exclusive, or at all events, it would doubtless often have been resorted to, long before this.   But no such claim has ever been made, by any one; and this may be regarded as pretty satisfactory that no such express provision exists.   The English courts seem to consider a provision in the charter for assessing damages, in a summary way, exclusive and not accumulative remedy.   *East and West India Docks &c. Gattke,* 3 Eng. Law & Eq., R. 59.   *Watkins* v. *Northern R. W. Co.,* 6; Ib. 179.

It must be conceded, then, that so far as a general, unqualified grant of the legislature will enable the defendants to build the road, and continue its operation, without liability to consequential damage to the proprietors of the land, not taken, they are acquit of all such liability. There is no doubt the legislature might have granted the charter with this liability attached to the company, or any other which they saw fit to attach. The accepting of the charter was not imperative upon the company. But having accepted it, they are bound by its conditions, and entitled to all its privileges. And it seems to us fair to assume, that no such obligation being imposed upon the company, in the charter, or by the general statutes of the State then in force, it was the purpose of the legislature to exempt them from such obligation, so far as they had the power to do so. The reason for doing this, it is scarcely needful to discuss. It was doubtless esteemed some object to encourage such companies to build their roads. The extent of such injuries had not been much considered, perhaps, at that time, and almost all our citizens then esteemed it a desideratum, to bring a railroad as near them as possible, the nearer the better. I should not probably be able to give much force to an argument, which is said to influence some minds, that it would be impossible for any company to stand up under such a burden. I should probably think, if such was the statute or the law, that they must stand up under it, or fall before it. And it seems to me, that such a statute regulation, which exists in England, and in Massachusetts, and perhaps in some of the other States, is highly equitable and just. And if these public works cannot be maintained upon fair and just grounds, by individual enterprise, they must be fostered by public grants, or delayed 'till they can be thus maintained. But if instead of this, the legislature sees fit to annex no such condition to the charter, and thus virtually, so far as they have the power, exempt them from any such obligation, the company are entitled to have their rights fairly, and fully vindicated, in the tribunals of the State, the same as other citizens. Nor should this be done grudgingly, or by compulsion, but justly and equitably, the same as in other cases, of like character. If the character of parties should come to be the measure of their rights, and this to be determined by the fallible judgments of imperfect humanity, swayed or seduced, by the conceits, the passions, and the prejudices of the moment, men might almost as well

resort at once to their ultimate rights, before civil government existed.

If, then, the legislature have purposely exempted this company from such an obligation, we do not well perceive how the plaintiff will be fairly able to deprive them of the benefit of the exemption, unless he can show that such an exemption is a violation of the constitutional restrictions upon the power of the legislature, or else that it is exempting a particular person from the general liability, by law attaching to all other persons, similarly situated, and in such case, the exemption would be void, probably, as an act of special legislation, upon general principles of reason and justice, like a particular act, allowing one citizen perpetual exemption from punishment for all offences, or from all liability for torts.

Perhaps it may be useful to consider this latter ground first. It should be premised, in the very outset, that it is no fair test of the general liability of a railroad company for their acts, to argue from what natural persons may lawfully do, and what, if done by them, becomes a nuisance. There is no doubt, that if an individual, or a mere partnership, should do all, that the defendants' company do daily, in the village of Burlington, they would become indictable for the continuance of a common nuisance, and a mere statute of exemption from liability to prosecution for crime would not affect their liability. And any citizen suffering special damage, by means of such nuisance, might have his action, or enjoin the offenders ordinarily, in equity.

But here the sovereignty of the State have seen fit to confer upon this company, an important franchise, a considerable portion of that sovereignty which themselves possess, the right to construct and continue a railway, almost from one extreme of the State to the other, with slight limitations, as to its course, and providing no tribunal, but their own engineers, to determine its location. The location, which they adopt then, is conclusive of their rights to build the road in that place, as to every one, unless resisted by some proceeding, taken at the time of the location, and brought to bear directly upon the question of the locating of the road. If the plaintiff, or others interested, in the location of this road, would insist, that it is improperly located, inasmuch as it is in a too populous portion of the village, to allow of such a work, this should have been done, by mandamus, or injunction, or some proper pro-

cess, to arrest and correct the evil, at the time of its being built. But it is now too late to bring this matter in discussion, perhaps, in any form, or at any time, since the decisions in *Lexington and Ohio R. R.* v. *Applegate*, 8 Dana Rep. 289, reversing the decision of Chancellor Bibb, *Philadelphia and Trenton R. R. Co.*, 6 Wharton R. 25; and many other cases, and especially the discussions in regard to the railways in the city of New York, and the fact that in the largest city upon the continent, the efforts of the constituted authorities have hitherto been found almost powerless for the regulation merely of the operation of railways, and locomotive engines, in her principal thoroughfares, and have made no approach, towards an exclusion of them even there.

It will therefore scarcely be claimed that the operations of the defendants, in the village of Burlington, are a mere nuisance. There was nothing in the proof tending to show, that they were so conducted as to be made such, by reason of mismanagement as to the time and manner of carrying on their operations, as seems to have been held in *some* of the New York cases, where the operation of engines, near a church, on Sunday, during the time of public worship, was regarded as actionable, as a common nuisance, causing special damage to this church, as a corporation.  *The First Baptist Church, &c.* v. *Sch. & Troy R. R. Co.*, 5 Barb. Sup. Ct. R. 79.  But the precise contrary doctrine was held, it seems, in *The First Baptist Church &c.* v. *Utica R. R. &c.*, 7 Barb. Sup. Ct. R. And in *Drake* v. *Hudson R. R. &c.*, 7 Barb. Sup. Ct. R. 508, it was held generally, that a road running through streets in a city, does not amount to the infringement of private rights, provided the passage is left free to travel.  The owners of property bounded on streets have no exclusive right of property in them  It belongs to the corporation, *the legal owners of the soil*, to manage and regulate the use of the streets.  See note to 7 ed. Kent's Com. 2 vol. 398, by Kent & Eaton.  It is said, in the last case, that for any injury done to the adjoining proprietors, they may have an action on the case.

The question still recurs, what is to be regarded as a legal injury?  If the operations of the railroad in that place are to be regarded as altogether legal, and the adjoining proprietors have no interest in the soil under the street, as in the case of an ordinary highway in the country, which seems to be the view taken by the

court here, then the ordinary carrying forward of the business of the railroad, although it may cause annoyance and damage, to the dwellers along the street, could scarcely be regarded as a legal injury, for which an action will lie. In the language of the law, it is *damnum absque injuria.* If the company constructed their road in an improper manner, thus causing needless damage to the adjoining proprietors, or if they wantonly, or negligently, run their cars, or carry on their operations, so as in any manner to cause needless damage to such proprietors, they would be entitled to a remedy, by action.

But upon general principles the defendants may conduct their lawful business, in a reasonable and prudent manner, " with as little injury to plaintiff's premises as was consistent," &c. in the language of the bill of exceptions in this case. It seems to be well settled law, that the first occupier of land acquires no right (within the period of prescription for presuming a grant) to exclude an adjoining proprietor, from the free use of his land, in any proper mode, by erections, or excavations. A building, which has stood more than twenty years, is presumed to have a grant to have its walls *supported by the adjoining land, and that its ancient lights shall not be darkened;* 1 Bar. Ab. 77, citing 22 H. 6, 15, 9 Co. 59. Bland's case, Bulstrode 115, 2 Rolle's Ab. 107, 143. 3 Leon 93. The same rule is laid down in all the elementary writers, and generally recognized in the English Reports. But in some of the American States, this doctrine of ancient lights is questioned, or denied. *Parker & Edgerton* v. *Foote,* 19 Wendell 309. But when no such question arises, the adjoining proprietors may excavate, or put up erections, to any extent, with impunity, using proper precautions, to cause no unnecessary damage. Prior occupancy gives no exclusive rights. *Panton* v. *Holland,* 17 Johns. R. 92. *Thurston* v. *Hancock,* 12 Mass. R. 220, where the subject is very elaborately discussed, and satisfactorily determined. It is here held, that if one, by digging into his own soil, cause the surface of his neighbor's land to slide into the pit, or cause damage to his neighbor's erections, by not using proper and reasonable precautions, in making his excavations, for such damage, an action will lie, but not for removing his earth in a prudent manner, whereby his neighbor's soil or erections caved and fell, by reason of 'extraordinary weight, put upon the land.

The same doctrine is elaborately discussed, and fully applied, in the case of *Lassala* v. *Holbrook*, 4 Paige 169. In *Partridge* v. *Scott*, 3 M. & W. 220, Baron Alderson says, "Rights of this sort, "if they can be established at all, must have their origin in grant. "If a man builds his house at the extremity of his land, he does "not thereby acquire a right of easement, for support or otherwise, "over the land of his neighbor." *Wyatt* v. *Harrison*, 23 E. C. L. R. 205, is a full authority, to the same extent. Lord Tenterden says, "It may be true that if my land joins that of another, and I "have not by building increased the weight upon my soil, and my "neighbor digs in his land, so as to cause mine to fall in, he may "be liable to an action. But if I have laid an additional weight "upon my land, it does not follow, that he is to be deprived of the "right of digging his own ground, because mine will then become "incapable of supporting the artificial weight, which I have laid "upon it." This may be now regarded, as the settled law upon this subject.

And this same principle has been extended to the construction of public works in England and this country. *Governor of Plate Manufacturers* v. *Meredith*, 4 T. R. 790. Lord Kenyon says, "If "the legislature think it necessary, as they do, in many cases, they "enable the commissioners, to award satisfaction to the individuals, "who happen to suffer. But if there be no such power (given the "commissioners,) the parties are without remedy, provided the com- "missioners do not exceed their jurisdiction." This was a case where the plaintiffs had been hindered in the free access, to their business premises, by the raising of the street opposite them, by the defendants, who were commissioners, for paving the street; not very dissimilar, in principle, from the plaintiff's case. *Sutton* v. *Clark*, 1 E. C. L. R. 229. *Boulton* v. *Crowther*, 9 Ib. 229. *King* v. *Pegham*, 15 Ib. 237. The same, or similar principles, have been repeatedly declared in this country. *Henry* v. *The Pittsburgh and Allegany Bridge Co.* 8 S. & Watts R. 85. But in this case the plaintiff recovered damages, for the negligent manner, in which the street was altered, thereby throwing water needlessly upon plaintiff's land. *Shrunk* v. *Schoolkill Nav. Co.*, 14 S. & R. 71. *Commonwealth* v. *Fisher*, 1 Penn. R. 467, and other cases stated more at length in the note.

From all which we must infer, that the defendants are not lia-

ble, upon general principles, for necessary consequential damages, accruing to the plaintiff's premises, or business, by the prudent erection, or operation, of the defendants' road, and not being made so by statute, but impliedly exempted from all such liability, it only remains to inquire how far such an exemption is consistent with the constitution of this State.

If this question were entirely new, it would certainly be attended with more difficulty, and would justify a far more extended examination than would now seem. excusable. The article embracing this subject in' our State constitution is in these words:—Part I. Art. II. "That private property ought to be subservient to pub-"lic uses, when necessity requires it; nevertheless, ————— "the owner ought to receive an *equivalent* IN MONEY." The corresponding provision in the United States constitution is in these words :. "Nor shall private property be taken for public use, with-"out just compensation." Reference to the United States constitution, is important only, as showing how similar provisions are expressed in different constitutions, all having the same general object in view. This constitutional provision is not of American origin. It existed in the Roman Empire, and in the English constitution, and in most, if not all, the modern European States. In the Code Napoleon, Book II, Title II, 545, it is thus expressed: "No one "can be compelled to give up his property, except for the public "good, and for a just and previous indemnity." This subject is discussed much at length by the civil .law writers referred to in Chancellor Kent's elaborate note upon the subject, 2 Comm. 7 ed. 393. It is scarcely needful to go much at length into the general subject here. The learned commentator contends, very strenuously, for compensation *in money*, to the extent of the value of the land taken. And how the Vermont constitution can fairly bear any other construction, is to me difficult of apprehension. That view is maintained in *Vanhorne & Dorrance*, 2 Dallas R. 304, by Justice Patterson. And as the subject of the mode of compensation was discussed in this country, at an early day, it seems probable, that it was limited in this State, to a money compensation, *de industria*. And that probably led the court to adopt a rather anomalous view of the subject, as it might seem to some, in *Livermore* v. *Jamaica*, 23 Vt. R. 361, limiting the constitutional provision, to the taking the fee of the land. That seemed to be the practical con-

struction put upon it in this State, from its earliest adoption, and perhaps the court were justified in making the decision they did, upon the ground of its practical construction.

But altogether aside from any express provision of the constitution, a statute taking property, without necessity of a public character, or without compensation in some form, would doubtless be regarded as entirely without the just limits of legislative power. It is so regarded in North Carolina, where they have no express constitutional provision upon the subject. *Railroad Company* v. *Davis*, 2 Dev. & Batt. 451. But in South Carolina, where no such constitutional provision exists, it was decided by a divided court, that compensation was not indispensable. But the better law is regarded as embodied in the dissenting opinion of Mr. Justice Richardson, *State* v. *Dawson*, 3 Hill R. 100. Assuming, then, that it is necessary, upon general principles, to make compensation to the proprietor in some form, even where a less interest in land than a fee is taken, the extent of the compensation is still open. See also *Wilkenson* v. *Leland*, 2 Pet. R. 656, STORY, Justice.

It seems little better than an evasion to say, that no compensation is required, where a perpetual easement in the land is taken, for public use. There is the same reason and justice, in allowing compensation in such case, as where the absolute fee is taken. And it has always been so regarded. But the general rule may now be regarded as settled in this country, that any advantages accruing to the proprietor of the land taken by the contemplated public work, may be taken into the account in appraising the damage. So, too, where any portion of the land is taken, the commissioners may doubtless estimate consequential damages, to the remaining portion of the land. It is scarcely possible to come fairly, at the value of the land taken, or the actual damage suffered, in any other mode.—*Symonds* v. *The City of Cincinnati*, 14 Ohio R. 147, Justice READ *dissenting.* The charter of defendants, Sec. 7, requires the commissioners to appraise such damage to the owner of land taken, as he may have sustained, or shall be liable to sustain, by the occupation of the land for the purpose aforesaid. It is not now regarded as essential that the damages should be paid in advance of assuming possession of the land, as required by the code Napoleon, and in some American cases.—*Bloodgood* v. *M. & H. Railroad Co.*, 14 Wendell 51, S. C., in error and reversed, 8

Wendell 9–59. The same rule obtains in England, at common law, *Lister* v. *Farrer*, 7 Ad. & Ellis R. 124 (34 Com. Law R. 51.) But so far as this court have been able to learn, merely consequential damages to lands not taken, where no statute provision upon the subject exists, have never been regarded as entitling the party to compensation, either from the State or those upon whom the State confers a public franchise, in the exercise of which the damage occurs. The English Railway act gives the right to damages to the owners of all lands "injuriously affected." Under this statute, the courts hold the corporations liable for all acts which would constitute a good ground of action, if done by a private person, without any authority from the State. So that there any act of a railway company, amounting to a nuisance in a private person, and causing special damage to any particular land owner, is good ground of claiming damages by such land owner.— *Queen* v. *Eastern Railroad Co.*, 2 Ad. & El. N. S. 347 (43 Eng. C. Law R. 706.) *Glover* v. *The North Staffordshire Railway Co.*, 5 Eng. Law & Eq. R. 335, (May 1, 1851.)

But in the absence of all statutory provision to that effect, no case, and certainly no principle seems to justify the subjecting a person, natural or artificial, in the prudent pursuit of his own lawful business, to the payment of consequential damage, to other persons, in their property or business. This always happens, more or less, in all rival pursuits, and often where there is nothing of that kind. One mill or one store, or school, often injures another. One's dwelling is undermined or its lights darkened, or its prospect obscured, and thus materially lessened in value, by the erection of other buildings, upon lands of other proprietors. One is beset with noise, or dust, or other inconvenience, by the alteration of a street, or more especially by the introduction of a railway, but there is no redress in any of these cases. The thing is lawful in the railroad, as much as in the other cases supposed. One would not care if they were altogether excluded from cities and large villages. But the legislature have determined otherwise, and the plaintiff must be content to take his chance with other citizens. These public works come too near some, and too remote from others. They benefit many, and injure some. It is not possible to equalize the advantages and disadvantages. It is so with everything, and always will be. We do not expect to have the consolation, if conso-

lation it be, to know, that these little inequalities will ever be made precisely equal with us all, in this life. But it will be so, at no very distant day, and it becomes a reasonable man, perhaps, not to magnify them inordinately, since they are so short lived, and so absolutely past the remedy of all human skill. Those most skilled in these matters, even empyrics of the most sanguine pretensions, soon find their philosophy at fault, in all attempts, at equalizing the ills of life. The advantages and disadvantages of a single railway could not be satisfactorily balanced, by all the courts of the State, in forty years. Hence they must be left as all other consequential damage and gain is left, to balance and counterbalance itself, as it best can. If the legislature had seen fit to annex a similar condition to these grants, with that found elsewhere, making the company liable for damage to all land "injuriously affected by the road," it might have been very well, and far more just, than it is, but not having done that, and having made an unqualified grant to the defendants, thus legalizing their proceedings, in building and running the road, it is impossible for the court, to impose any further restrictions upon them, than upon other legal business, which one carries on, upon his own land.

But some of the cases seem to justify some limitation upon the right of railway companies, or other grants, for public purposes, in regard to diverting water courses, rivers and other streams. *Broughton* v. *Carter*, 18 Johns. R. 404, seems to require, that such public companies should not needlessly injure the adjoining proprietors, by turning the water upon them in such a manner, and at such points, as materially to injure them. Where it is practicable, within the range of any reasonable expense, to save the adjoining proprietors from damage, by the water flowing from the road, or from a natural stream of water, and this is not done, and the land owner suffers damage, the company is liable to an action. The case of *Hooker* v. *New Haven & Northampton Company*, 14 Conn. R. 146, goes upon this ground, and extends the right of action to the land owners below the works, no part of whose land is taken, but which is materially injured, by the defective manner in which the public works are constructed. It was held, too, by KENT, chancellor, in *Gardner* v. *Newburgh*, 2 Johns. Ch. R. 162, that one could not be deprived of the benefit of a stream of water, by the State even, without compensation, and the defendants were

enjoined from building an acqueduct, by public grant, until they made compensation to the proprietors of land, below the point, at which it was proposed to divert the spring, for the supply of the acqueduct to the city of Newburgh.   These, and some other cases of a similar character, seem to be founded in reason and justice, and not at all to conflict with the general principles, before laid down by us, that the defendants are not liable for merely consequential damages, to land taken, or expressly affected in themselves, as is the case where water is diverted, or caused to overflow the land.   But upon general principles, every one is liable for diverting a stream of water, liable for the damage caused to those, from whom it is diverted; and to an action at law.   One may use water running over his land, in any manner he chooses, but he may not divert it from its ordinary channel.   The State cannot do this, more than an individual, unless it become necessary, to the accomplishment of some public work, and in that case, is bound to make compensation.   Here the land is not taken, but the water, which makes the land valuable, is taken, and that is the same in law, as if the land were taken.   So, too, if by making imperfect sluices, or other passage for streams, which defendants' road crosses, the land of adjoining proprietors is injured, the defendants are liable, whether any portion of this land had been taken by the company, or not, and whether damages for land taken had been appraised or not.   This liability, (*F. Whitcomb* v. *Vt. C. R. R. Co.*) is for an omission of duty in building their road, and is a virtual tort.   Upon this ground, it seems to the court, that in the case of Frederic Whitcomb, against the defendants, the plaintiff was entitled to recover his full damage.   These damages were occasioned by the want of a sufficient sluice or culvert, which it was the duty of the defendants to build, and of this they seem to have been aware, as they built one of wood, which failed.   The damages paid to Freeman, present no impediment, as it seems to us, to the plaintiff's recovery, inasmuch as it was not competent for the appraisers to take into account any such prospective or possible damage, to accrue from a neglect and breach of duty, on the part of defendants.   A contrary rule would be attended with great uncertainty and great probable wrong.   It is possible some of the cases from Penn., which we remark upon more at length, in a note, may seem to favor the idea, that a railway company is not liable for diverting

a stream of water, when it might be restored to its former state, but that certainly is inconsistent with general principles of reason and justice, and common law, and equally at variance with the express provisions of defendants' charter.  Sec. 10 provides, that all water courses and streams shall be restored, "to their former state and usefulness, as near as practicable." This would not impose upon the defendants impossibilities, as was held in *Queen* v. *Scott*, 3 Ad. & Ellis R. 543, (433 C. L. R. 858.)  Nor will it probably require the defendants to build culverts, where it is not obvious, that one will probably be needed, or where one would only be needed once in twenty, or thirty, or fifty, or one hundred years, in the most extraordinary freshets, and which might therefore be regarded as accidental, or the act of Providence, and not to be provided against, by mere common prudence.

But in the present case, it seems such a culvert or sluice, was needful, every year, and that this became known to defendants before constructing their embankment, and that they attempted to build one, which was so imperfectly built, that it filled up.  We think, therefore, the plaintiff is entitled to have such damages of defendants, as he has sustained by reason of their not building such a culvert, as would be ordinarily needful, in that place, such as prudent men, under the circumstances, would have been likely to build.  We cannot regard the deed of Freeman and wife, as amounting to a license to build their road upon the land granted, in any different manner, from what they would have been entitled to do, had they taken the right of way merely, in the ordinary mode.  Indeed, such a deed of the fee of the land has been sometimes held only to convey the right of way to such corporation, that being all which it can properly hold.  But not to discuss that point, it certainly could not be fairly regarded as giving a right to build the road upon the land, in any other mode, than that defined in their charter, restoring water courses to their former state as far as practicable.

The result of all which would seem to be, that, in the case of Hatch, the judgment must be affirmed, unless the plaintiff thinks it an object, of some importance to him, to have the question submitted to the jury, whether the road was built in a manner to do him no unnecessary damage.  And this would seem to confine the claim for damage pretty much to the turning the water upon him,

as the case is stated in the exceptions. In the case of Whitcomb the judgment is reversed and the case remanded.

We have taken no notice of certain cases, where it has been held, that railroad companies are not liable for cutting off springs of water, in making their excavations. For it is presumable, that such cases go mainly upon the ground, that such springs could not have been restored to their former state, or else they were covert, like a spring supplying a well. *Aldrich* v. *Cheshire R. R. Co.*, 1 Foster N. H. R. 359, or perhaps, that the payment of damage covered the loss which the party had sustained, by having the spring cut off, where it was impossible to restore it. The case of *Francis Dodge* v. *County Commissioners of Essex*, 3 Metcalf R. 380, seems to sustain the leading views which we have here taken.

NOTE. *Trustees of the Presbyterian Society in Waterloo* v. *Aub. & Roch. R. R. Company*. 3 Hill 567, decides, that the legislature cannot give to the company the right to construct their road over a public highway, without paying damages to the proprietor of the land covered by the highway. The fact that he has had his damages for the highway appraised, does not entitle the public to build a railroad over the same land. And this is certainly plausible and equitable. And the Supreme Court of N. Y. hold in this case, that the railroad having built the road without causing damages to be appraised by the commissioners, were liable in trespass. The charter of that company was similar to this, giving the power to pass highways, restoring them to their former state and usefulness.

The case of *Fletcher* v. *The Auburn & Syracuse R. R. Co.*, 25 Wendell 462, is a case certainly very much in point for the plaintiffs. It seems to go upon the general ground that the company are liable to consequential damages for building their road through a street adjoining plaintiff's land. This case might perhaps have been put upon the ground that the plaintiff, owning adjoining the street, owned to the middle of the street, and that consequently the company built their road over a portion of his land, and he was entitled to all the additional damages he thereby sustained; but the case is not put upon any such ground. But this case must be regarded as shaken, if not overruled, by subsequent cases in that State, and by others in other States, referred to in the opinion.

*The Seneca Road Co.* v. *The Auburn & Rochester R. R. Co.*, 5 Hill 170, only decides, that the railway company are liable to damages for crossing a turnpike company's road, notwithstanding the charter gives that right; but it would seem not to the consequential damages to the turnpike company by means of the construction of the railway. This is reasonable and just, and for anything I can perceive, altogether sound.

*Miller* v *Aub. & Syracuse R. R. Co.*, 6 Hill 61, is much like the present case, the gravamen of the complaint being, that a large embankment was built opposite the plaintiff's house or land, thereby interrupting plaintiff's ingress and egress to certain lots belonging to him. It seems to be assumed that the defendants were liable, and perhaps they would be, on general principles, upon the terms of their charters.

Hatch *v.* Vt. Central R. R. Co.   Whitcomb *v.* Vt. Central R. R. Co.

If they assumed to use a road passing over the plaintiff's land, they would be, under the terms of this charter, bound to pay any increased damages caused thereby, certainly in equity and justice, and if they had so constructed their road as to render it comparatively useless to the adjoining proprietors, without any imperious necessity, they have not restored it to its former state of usefulness, for the adjoining proprietors are chiefly interested in this provision.   But this case turned chiefly upon a former license given by the plaintiff to build the road, and subsequently, after the road was built, revoked.   The circuit judges rejected it altogether, as being of no force.   The Supreme Court seem to think it might justify acts done under it, but that defendants must *remove their road*, or pay indefinite damages to plaintiff, for erecting an embankment under his permission!   This is a remarkable view of the law, if it is intended to express the ultimate rights of the parties, both in law and equity.   I had supposed it to be a conceded point, that in equity, under such a state of facts, the plaintiff would be compelled to execute a license of sufficient extent to cover the works, actually erected in faith of the oral permission, which in the case of a railroad would be indefinite.

*Zimmerman* v. *Union Canal Co.*, 1 Watts & Sergeant 346, is an application for damages, occasioned to land which was in plaintiff's grantor, at the time the defendants built the dam, complained of as destroying a fording place on the land. The court held that the grantor was entitled to damages if any one, but that in fact, the stream being a public highway, no one of the adjoining land owners is entitled to ask damages for any act of the State or their agents, in improving the use of it as a highway.   The persons adjoining a highway or street must submit to any necessary improvement, as a highway, without additional damage.

*Shrunk* v. *Schoolkill Navigation Co.*, 14 Serg. & Rawle 71, decides that rivers above tide water, are still highways, and that a riparian proprietor whose privilege of fishery is damaged by a dam built by a navigation company, within their charter, cannot sustain an action against the company therefor.

*Railroad Co.* v. *Heiser*, 8 Barr. 366, decides that land owners, through whose land the road runs, and where damages are assessed, "and other inconveniences likely to result to the owner of the land," cannot recover of the company for damages caused to his woods, by reason of sparks emitted by the company's engines.   The case goes upon the ground that such a damage is the unavoidable result of the use of engines, which the company may lawfully use upon their road, and of course they are not liable except for negligence.

In *Commonwealth* v. *Fisher*, 1 Penn. R. 467, it is held that the State may give to individuals the right to deepen the channel of the Susquehannah river, and that an individual who thereby loses the use of a spring, which comes out below high water mark, is not entitled to damages, such river being public property.

Case of the *Philadelphia and Trenton Railroad*, 6 Wharton R. 25, (1845,) establishes the principle that the State may allow the railroad to do an act which causes consequential injury to those whose land is not taken, without compensation.   That the prohibition in the Constitution does not extend to such property, but only to the taking of the thing by the State.   This was the case of a railway laid along a public street, and thereby causing damage to individuals of a consequential character, and the court held, that it could make no difference, if it were conceded that the persons complaining, owned to the middle of the street, the fee of the land which had been dedicated to the public use, for the purposes of a common highway.   I might, perhaps, hesitate to follow this case to the full extent.

*Monongahela Navigation Co.* v. *Coons*, 6 Watts & Sergeant 101, (1843.)   This

case holds, that the company are not liable for consequential injury to a person in the necessary prosecution of their grant.

But if the company accept an amended charter, reserving to the legislature the right to amend the charter of the company, doing them no injustice, the legislature may then make them liable by a subsequent act, for damages already accrued. *Same* v. *same,* 6 Barr. 379, (1847.)

*Susquehannah Canal Co.* v. *Wright,* 9 Watts & Sergeant 9. This case holds, that a grant to an individual to build a dam and take water from the Susquehannah river for private use, is subject to the right to improve the navigation of the river. And if subsequently they grant this privilege to a company, and the company in the necessary pursuit of the grant, damage the mills of the first grantee, he is not entitled to recover therefor.

*Mayor* v. *Randolph,* 4 Watts & Serg. 514, only shows that the Mayor is not to be made liable for the manner of grading streets, by referring it to a jury, whether it was not done in that mode to benefit the corporation.

The revised statute of Mass. is very broad, including "all damage" "occasioned by laying out, making or maintaining said road, as well as by taking any land or materials therefor." It was held, under this provision, that the company were liable to damages for draining a spring, by digging on their own land.

In Mass., it would seem, that by statute, the company is liable for fires communicated by their engines.

*Lansing* v. *Smith,* 8 Cowen 146, decides that when docks of private persons are injured by the construction of a basin in the river, at Albany, under a grant of the legislature, they could recover nothing for such consequential damage,—that it was *damnum absque injuria.*

*Aldrich* v. *Cheshire R. R. Co.,* 1 Foster R. 359, decides, that the assessment of damages to a land owner precludes him from recovering for the loss of a spring, in consequence of an excavation, subsequently but lawfully made.

We have thus carefully reviewed all the cases, bearing upon the question, which have been brought to our notice, and we find no reason to doubt the perfect soundness of the conclusion to which we have arrived.