# COOS,

## JULY TERM, A. D. 1857.

35  569
72  347
72  482

### JOHNSON *v.* ATLANTIC AND ST. LAWRENCE RAILROAD CO.

If there is no difficulty in constructing a culvert under a railroad, to carry off the water from a meadow over which the railroad passes, the railroad company will be liable for flowing the meadow, if they do not make a culvert, with ditches to and from it, sufficiently low to drain off the water.

Where a declaration alleged that the defendant caused water to overflow his meadow, and thereby rendered it spongy and impassable, and he was deprived of the use of his meadow, it was held that evidence was admissible to show that his muck-bed in the meadow was made inaccessible by the flowage.

IN TRESPASS ON THE CASE, the plaintiff alleged that on, &c., at, &c., and since, he was seized of a meadow, &c., but the defendants then and there, in the construction of their railroad across said meadow, &c., so negligently, &c., constructed the said railroad, that for want of suitable care, &c., and by their neglect to provide sufficient water-courses for the water, which had always theretofore run naturally across said meadow, &c., the water then and there naturally running, was obstructed and caused to overflow said meadow ever since, &c., whereby the plaintiff's grass, growing in his said meadow, of the value, &c., was destroyed, and his meadow is become spongy and impassable, and he has been deprived of the use and profit of his meadow.

Upon the trial, the plaintiff's evidence tended to prove that the culvert under the railroad, through which alone the water

running into the meadow from springs, and from the hills, could escape, was not made in the low part of the meadow, where the water naturally run, but on the higher land ; that the bottom of the culvert was not as low as the surface of the meadow, so that the water would be two or three feet upon the low part of the meadow, before it would be as high as the bottom of the culvert, and the culvert was dug about two feet below the natural surface of the land there, and no ditches were dug from the culvert to the meadow, or to the low ground below the culvert.

The court instructed the jury, that if they found that there was no difficulty in building a suitable culvert to draw the water off said meadow, and that the water was flowed back upon the meadow by the embankment, either in consequence of the bottom of the culvert not being sunk low enough to drain the meadow, or in consequence of the culvert not being connected by ditches, cut low enough to carry the water of the meadow through the culvert to the natural or other channels of the water below, the plaintiff was entitled to recover. To this instruction the defendants excepted.

The plaintiff introduced evidence tending to show that there was in his meadow a large body of muck, valuable for manure, which was to a considerable extent covered and filled by the water, thrown upon the meadow by the acts of the defendants, by which he was prevented from digging any part of the same. The defendants objected, that no part of the declaration was applicable to an injury of this kind, and the evidence was therefore inadmissible ; but the court admitted it, and the defendants excepted.

The jury found a verdict for the plaintiff, which the defendants move may be set aside, by reason of said exceptions.

*Burns* and *Fletcher*, for the defendants.

*G. C. Williams*, for the plaintiff.

BELL, J. In the case of *Dearborn* v. *Boston, Concord &*

*Montreal Railroad,* 24 N. H. 185, the court considered the principles upon which the damages to be paid by railroad corporations, upon the laying out of their roads, were to be estimated, and the rights acquired by them by reason of the assessment and payment of such damages. The court there say :

" The corporation acquire the right to construct the road in any suitable and proper manner, for their own convenience and the public accommodation, and the right to vary and change that construction, within the established limits of their road, from time to time forever. Accordingly, the jury should take into consideration, and appraise all damages, direct and consequential, present and prospective, certain and contingent, which may be judged by them fairly to result to the land owner by the loss of his property and rights, and the injuries done thereto." [*Sabin* v. *Vt. Central Railroad,* 25 Vt. 368.]

For any loss or injury which results from building the road in a suitable and proper manner, the land-owner can maintain no action against the company. The damages awarded must be regarded as a full compensation for all the injury which the land-owner may sustain, then or at any future time, from any cause which the commissioners were bound or had a right to consider. It must be taken that they have done their duty in considering all such causes of damage as were legitimate subjects for their consideration. [*Aldrich* v. *Cheshire Railroad,* 21 N. H. 359 ; *Furniss* v. *Hudson River Railroad,* 5 Sand. 551 ; *Lancaster & York Railway Company* v. *Evans,* 19 E. L. & E. 300.] But no authority is given to the railroad to make their road in an unsuitable and improper manner, and the corporation must remain liable for all such damages as result from an improper and unsuitable construction. [25 Vt. 368 ; *Dodge* v. *County Commissioner,* 3 Met. 380 ; *Whitcomb* v. *Vt. Central Railroad,* 25 Vt. 68.]

Upon these principles the question here is, whether the culvert was so built, at such a place and of such dimensions, and so connected with the natural or existing channels of the water, as that the railroad could be said to be built in a suitable and

proper manner. It is not, however, a matter of course that every case is to be referred to the jury under such general instructions. The law has in some cases prescribed the rule in a more definite way. In the case of rights connected with running water, many principles have become settled, and parties are bound by them in cases to which they apply.

By the mere purchase of the fee simple of the land, a railroad would not acquire a right to flow the water upon the lands above them upon the stream. But the railroad acquire in this respect more extensive rights than they would have, as owners, as against the parties whose lands have been taken for their road. They acquire the right to construct their road in a suitable and proper manner, whatever may be the injury to the residue of the lands of the same owner. *Mason* v. *K. & P. Railroad*, 31 Me. 217 ; *Dodge* v. *Co. Com.*, 3 Met. 380 ; *Sabin* v. *Vt. Central Railroad*, 25 Vt. 368.

Though in all ordinary cases they acquire no right to obstruct a natural water-course, and must construct a culvert or drain, with a proper grade, to carry off the water ; *Propr's* v. *N. & L. Railroad*, 10 Cush. 385 ; *Rowe* v. *Addison*, 34 N. H. 306 ; yet if it should be found to be necessary, for the suitable and proper construction of the railroad, to obstruct the water wholly, and to submerge the other lands of the owner of the land taken for the track, they must be taken to have acquired the right to flow it, and would not be answerable for any damage that might result from that cause. But the case thus supposed is a case of necessity, and not of caprice or economy merely. *Whitcomb* v. *Vt. Central Railroad*, 25 Vt. 68 ; *Hooker* v. *N. H. &c. Railroad*, 14 Conn. 146 ; *Mason* v. *K. & P. Railroad*, 31 Me. 217.

This case was not one which was supposed to give rise to any question of necessity. There was nothing tending to show that the road could not be suitably and properly built without flowing the meadow in the slightest degree. The case shows no pretence nor suggestion of that kind, nor even a pretence that the expense of a proper culvert and suitable ditches was in any

degree disproportionate to the value of the meadow. If a meadow was very small, or very poor, and an embankment was very high, and consequently wide, the expense of a culvert might exceed the entire value of the meadow, and in such a case it might perhaps be contended, that it would be a suitable and proper mode of building the road to make no water-way, and that it was consequently the duty of the commissioners to allow for the whole damage resulting from building the road in this way; 25 Vt. 68; but there was no suggestion of any such state of facts, nor of any facts, which would render it proper for the commissioners to allow damages for any flowage of the meadow. There was no evidence having that bearing.

It was not, therefore, a case where it was necessary to submit to the jury, in terms, whether the railroad was constructed in a suitable and proper manner. The question was greatly narrowed by the fact that there could be no pretence that the railroad had any right to flow the meadow. If they had not, the single question would be, whether they had so constructed their road as to injure the meadow by flowage, and upon this point we think the charge correct.

A question arose whether the plaintiff should be allowed to show that his meadow contained a large body of muck, valuable for manure, which was filled and covered with water, so that it could not be dug for use. The court held that as it was alleged in his declaration that his meadow is become spongy, rotten, impassable and of no value, and he has thereby been deprived of the use and profit of it, the evidence was competent. The complaint was substantially, that he was deprived of the use of his meadow, and it was competent for him to show in what manner, and every manner, in which the flowing impaired the profits of his land.

It is not suggested that any error occurred in laying down the rule of damages, and the jury might as properly allow damages to the plaintiff for being deprived of the use of his muck-beds, as for being deprived of the crop of grass usually growing on the meadow. It does not appear that any claim was set up

relating to the muck, except the injury arising from its being inaccessible.

The rulings being sustained, there must be

*Judgment on the verdict.*