## MISSISSIPPI CENTRAL RAILROAD CO. VS. A. T. MASON.

1. LIABILITY OF RAILROAD COMPANY: *Damages resulting from the obstruction of a watercourse. Concurrent negligence.*

    The general rule with regard to concurrent negligence is, that the party seeking legal redress must not only show his adversary to be in the wrong, but must also prove that no negligence of his own has tended to increase or consummate the injury. To prevent a recovery the plaintiff's negligence must proximately contribute to the injury. If the sole immediate cause of the injury was the defendant's negligence, the plaintiff can recover, notwithstanding previous negligence of his own. Where the negligence of the defendant is proximate, and that of the plaintiff remote, the action will be sustained, though the plaintiff be not entirely without fault. Negligence is always a question for the jury, unless the facts are undisputed, and the result of those facts unquestionable as proving or disproving negligence. If the facts are conceded and the inference is doubtful, it should be a question for the jury, and not for the court. If a railroad company, by making imperfect sluices, or other passages for streams over which they pass, injure the land of the adjoining proprietors by overflow, the company is bound for the damages sustained by the obstruction of the stream.

2. SAME: SAME: *Negligence and credibility of witnesses, and the weight of the evidence, are questions for jury. Case in judgment.*

    Whether the plaintiff's acts contributed proximately to the injury, whether it was the result of natural causes, or of the erection of insufficient culverts, is a question for the consideration of the jury, who are the judges of the credibility of the witnesses, and the weight of testimony.

    Per SIMRALL, J., on re-argument :

3. SAME: SAME: *Watercourse.*

    The right of the owner of lands to the continued flow of the water, in its natural channel, can only be extinguished by operation of law, the act of God, or the act of himself. If the abandonment or extinguishment of the right is predicated upon the act of the party, something must be done absolutely destructive of the right, or which is incompatible with its exercise.

4. ABANDONMENT: *What constitutes it.*

    Express consent, or implied assent, waives the original right. The effect of cessor of use coupled with an act, indicating an intention to abandon the right, would be the same as a release. Where a railroad crossing a stream obstructs the natural course of the water, and the owner of the

land diverts the stream to a new channel in order to work an extinguishment of the right to the natural channel, there must be also an intention permanently to abandon the old channel, and whether such intention existed was a question for the consideration of the jury.

Per TARBELL, J., dissenting:

5. SAME: SAME: *Easements and servitudes.*

An easement is a privilege or convenience which one has over the lands of another; to constitute it, two estates are necessary, one giving and the other receiving the advantage. Running water over one's own land is not an easement, but a part of the realty, and passes with it. The watercourse may be defined as an incorporeal hereditament annexed to the freehold. The right to take water from the land of another is an easement. The right of the railroad over the land of the citizen is but an easement, or right of way over the land.

6. SAME: SAME: *Servitude — Abandonment.*

The rule of the civil law is that the party himself to whom any sort of servitude is due may, short of the period of prescription, effect its extinguishment by merely suffering the erection of obstructions of a permanent and solid kind, such as edifices and walls, and *a fortiori*, if the act of obstruction be done by the party to whom the servitude is due. At common law, there must be a total cessation of the exercise of the right to the servitude during the entire time necessary to raise the presumption of extinguishment, or there must have been some permanent obstacle raised against it, and which absolutely destroyed it. Where a railroad company constructs its road over a watercourse on private lands, it is the duty of the owner of such lands, after a stream has been properly turned, to watch the future action of the water upon their own lands, and protect the banks, and the company are not required to protect them from the effects of the water at all times. Ang. on W. C., sec. 465.

ERROR to the Circuit Court of *Marshall* County.

Hon. ORLANDO DAVIS, Judge.

Defendant in error brought suit in Benton county circuit court against plaintiffs in error, to recover damages, alleged to have resulted to his lands in consequence of the obstruction of the water and the overflow of his farm. It was alleged that the Mississpipi Central Railroad, in 1854, passing over Mason's land, crossed a watercourse, but ;neglected and failed to cut proper ditches to carry off the water, but obstructed the passage, " by reason where-

of, on the — day of January, 1861, and from thence hitherto, the water falling on the lands of plaintiff and others, has been dammed up and not permitted to pass or escape, whereby said land has been greatly injured, and its value greatly depreciated, to wit: the value of twelve thousand dollars, and the crops planted thereon, have been lost and destroyed, to wit: to the value of six thousand dollars." Judgment was demanded for $18,000. To which defendant pleaded " not guilty." The case was tried, and verdict rendered for plaintiff, and damages assessed at $5,000.

A motion was made for a new trial, which was overruled by the court, and exceptions taken, and the case was brought to this court on writ of error.

The testimony is voluminous, covering about seventy-eight pages of the record, much of which is contradictory.

The following are assigned for error :

1. The court below erred in giving the sixth, seventh and eighth instructions for plaintiff.

2. The court erred in modifying the twelfth and refusing the fifteenth instruction asked for by the defendants below.

3. The court erred in refusing a new trial on the motion therefor, on the ground that the jury found contrary to law and evidence.

The instructions given for plaintiff below and assigned for error Nos. 6, 7 and 8, are as follows :

" 6. If the jury believe from the evidence that the breakwater placed by the defendant on its right of way over plaintiff's land, has prevented a stream of water running naturally through plaintiff's land from regaining its natural channel, and which channel had been previously closed by defendant, and had not been furnished by defendant with proper opening, and which natural channel could be resonably restored by the use of reasonable and ordinary means by defendant ; and that plaintiff has been and is still injured by the erection of such breakwater, defendant is responsible for such damage.

"7. If the jury believe from the evidence that the defendant

so carelessly and negligently repaired its road-bed as to do material injury to plaintiff, and that plaintiff used all reasonable means to protect himself from such damage, under the circumstances, then plaintiff would not be guilty of contributory negligence, because of using such means ; and the defendant would be responsible for such damages accruing since 1861.

" 8. If the jury believe from the evidence that the defendant in building its roadbed across Gray creek improperly and carelessly filled up the streambed of Gray's creek, and that by such filling, plaintiff's land was damaged after 1861, defendant would be responsible for such damage."

The twelfth instruction for defendant below was modified, and the fifteenth refused, as follows :

" 12. Though the jury may believe from the evidence that the railroad company was negligent and careless in the constrution of its roadbed and changes therein, yet if they also believe from the evidence that the plaintiff was negligent or careless about keeping in proper condition certain ditches or drains, which had been opened upon his premises, and which for some years were kept in repair, and that this negligence or carelessness contributed to the injuries complained of they must find for the defendant."

The court modified by striking out the words "about keeping in proper condition certain ditches  *  *  *  *  *  which for some years had been kept in repair," and gave the following instruction :

" 12. Though the jury may believe from the evidence that the railroad company was negligent and careless in the construction of its roadbed and changes therein, yet if they also believe from the evidence, that the plaintiff was negligent and careless, and that this negligence and carelessness contribued to the injuries complained of, they must find for the defendant."

The court refused the 15th, as follows :

" 15. If the jury believe from the evidence that in 1861 the defendant filled up a trestle on which the roadbed was originally built, and under which a stream or creek passed, and made only

a small culvert in lieu of said trestle, not sufficient to pass the waters of said creek, still, if they also believe from the evidence, that before said trestle was filled up, the plaintiff himself had diverted said watercourse, and caused it to run in a different channel on his own land, entirely out of the line of the road or its right of way, then the road had a right to fill up said trestle, if by so doing, the strength and safety of said roadbed was increased, so as better to answer the purposes of said road, and give greater security to passengers and freight."

*W. P. Harris*, for plaintiff in error, presented the following features of the case as determining its character, and to show that the verdict has no foundation :

1. There is no history given of the operation of the causes producing the heavy deposit of sand after the beginning of 1863, and resulting in the irretrievable ruin of plaintiff's land as early as 1865.

2. Therefore, anything which the plaintiff presents (being himself absent) as the cause of the ruin, is belief and opinion.

3. He and his witnesses ascribe it to the embankment made by the railroad company in March, 1861. This opinion is shown to be not well founded, because the condition of the valley continued the same, after the earthwork, for two seasons of freshets — 1861, 1862, down to 1863.

4. The choking up of the channel of Lamar creek was caused by the opening of the straight channel, of great capacity, by which its waters were directed, and all momentum from volume and motion in the current of that stream was neutralized, causing, by operation of natural physical laws, a deposit which filled up that channel, and what might have been safely predicted of the operation of these laws during three years, from 1858 to 1861, is attested by the positive testimony of Richardson, conductor, and Brewer, who built the culvert, that no channel could then be traced in 1861. This fact rests on the highest evidence, reason and actual observation.

5. The theory of plaintiff is, that the filling up of the outlets of

the water of Lamar creek was the cause of overflow and deposit. It is apparent that the filling up of the channel had more influence than anything else. This resulted from the total abandonment of the farm in 1862, and the tillage of the bordering hill land and valley land.

6. Plaintiff's counsel, while conceding that Lamar's old channel naturally filled with deposit in the three years from 1858 to 1861, takes the strange position that the plaintiff was driven to make the canal by discovering that the trestle, made in 1858, and probably before he purchased, made the overflow. This is most improbable, but plaintiff admits that that partial obstruction was attended with no material injury. It is apparent that after his elbow ditch brought the Boykin ditch within a very short distance of each other, he consulted his own interest as a farmer in completing the connection. It is certain that his apprehensions from the trestle of 1865 were not well founded. After his ditch had filled up to a level with the valley no ill consequences followed.

7. Railroads must cross valleys, either on trestles or embankments. The trestle has been invariably used where there is a flow of water, and it is the policy of the railroad company to make as little obstruction as possible, and there is no proof that there was a single " bents" in the channel of Lamar creek.

8. The plaintiff, therefore, without complaining of the trestle, on his own views, created the connection in a great central canal, which directed the creek and filled up the old channel. This ditch was, after 1862, abandoned, and not only that but the hillside ditch, another Boykin canal, as also the tillage of the valley and hillsides. These causes, as the intelligent opinions founded on observation show, would naturally result in a deposit of sand in the valley.

9. After 1862, the road and farm were abandoned on account of the occupation of Marshall county by federal troops. The embankment was made on a level surface of the valley, without objection and without harm, while the drainage was kept in operation. Who shall bear the blame here?

The idea that a verdict can stand on the slender and unsubstantial foundation that the canal which choked up Lamar creek was made by reason of apprehension of the trestle over Lamar creek, and for that reason defendants are responsible, indirectly, for its filling up, and that the canal thus opened might be afterwards abandonded, after Lamar channel had been filled up by that canal, is an extravagance which cannot possibly enter into the administration.

*Walter & Scruggs*, for defendant in error, filed an elaborate written brief, making the following points and citing the following authorities, to wit:

We concede that the donation of the right of way carries with it the exemption from liability for all damages necessarily flowing from the reasonable and prudent use of such right of way. We will further concede, for the purpose of this argument, that the appellant was the absolute owner of the 100 feet donated by appellees for its way of track. More cannot be asked. Yet with these concessions, we insist that appellant was bound to use this 100 feet under the legal principle announced in the maxim, *sic utere tuo ut alienum non lœdas.* Even the most innocent and lawful acts in themselves may become wrongful when done without regard to the rights of others, and without skill and care in performing them. The appellant had the right to build its road through the appellee's land. If in making its cuts it tapped the source of his springs, and dried them up, or if it made a bank over which he could not conveniently pass, it were not liable. But if in making its embankment it filled up the streams running through his places, and did not use proper care to leave a sufficient opening for the water, it then so used its own right as to abuse his, and for this it is responsible. Any other position would lead to the most absurd and ruinous consequences by giving the railroads power to stop every stream in its path, and to flood and destroy every farm on its line. We refer to Whitcomb *v.* Vermont Central R. R., and Hatch *v.* Same, 25 Vt., 69. The court say: "If the defendant made imperfect sluices, or rather passage, for

streams, which defendants road crosses, the land of adjoining proprietors was injured, the defendants are liable, whether any portion of the land was taken or not, and whether the damage had been assessed or not." See also Blood v. Nashua R. R. Cor., 2 Gray, 137; Tinsman v. Belvidere R. R. Co., 2 Dutcher, 158; Broughton v. Carter, 18 Johns., 405; Underwood v. Carney, 1 Cush., 292; Whitehouse v. Androscoggin R. R. Co., 52 Me., 208; Hooksett v. Man. Co., 44 N. H., 105; Lancashire R. R. Co. v. Evans, 19 E. L. & Eq., 295.   We invite special attention to remarks in Tyler v. Wilkinson, 4 Mason, 400; Washburn on Easements, 279, 280; Case of Hatch, 25 Vt., 49; Gilleland v. Pittsburg R. R. Co., 56 Penn. St., 445.   Appellant's witnesses occupy the position of experts simply.   As to the value of this kind of testimony, see American Law Review, January and April, 1871, vol. 5, nos. 2 and 3. As to the instructions: The only objection urged against the 6th instruction is, that it was immaterial or irrelevant, on the ground that the land had been irretrievably ruined before 1871. Concede that it was immaterial, for argument.   This court has repeatedly decided that the giving or refusing of an immaterial charge is not error.   Stephenson's Heirs v. McReary, 12 S. & M., 9; Evans' Case, 44 Miss., 774; McCready v. S. C. R. R. Co., 2 Strob., 356; 7 Rich., 533; 5 Ind. (Porter), 187; 12 Moore, 412; Childress v. Ford, 10 S. & M., 25; Lamar v. Williams, 39 Miss., 342; Dickson v. Moody, 2 S. & M., 17.   In view of the principle above stated, read this 6th charge in connection with appellee's 4th, and appellant's 2d, 7th, 8th and 14th, and especially the 14th, and it will be seen that the law has been correctly charged.   7th instruction:   It is objected that this instruction is bad in using the words, "under the circumstances."   These words were used on the question of " contributory negligence," and refer to the time and circumstances.   8th instruction:   We don't know appellant's objection to this charge; none was urged on the argument.   There was no proof as to the time when the nuisance was abated; there can be no error.   Appellant's 12th instruction was properly refused.   It is not the law.   See Dix v. Brown, 41 Miss., 131; Pat-

ton's Case, 31 id., 156; Whitfield's Case, 44 id., 466. It is not error to refuse an instruction which is pertinent and proper, if it has already been substantially given. Moye v. Herndon, 30 Miss., 110; Ellis v. Bank Natchez, 7 How., 294; Head's Case, 44 Miss., 731. The 15th instruction, refused by the court, is not the law of the case.

Peyton, C. J., delivered the opinion of the court.

A. T. Mason institutes suit in the circuit court of Benton county, against the Mississippi Central Railroad Company, for the recovery of damages alleged to have been sustained by him by the carelessness and negligence of the defendants in the construction and repair of their railroad ·bed on their right of way through his land.

Upon the plea of the general issue, not guilty, the cause was submitted to a jury, who found for the plaintiff, and assessed his damages at five thousand dollars.

And thereupon the defendants moved the court for a new trial, on the following grounds:

1. The court erroneously charged on plaintiff's motion.

2. The court erroneously refused to charge the jury on defendant's motion.

3. The court erroneously modified charges asked for the defendants.

4. The verdict was contrary to law and evidence.

5. Because of the misbehavior of the jury, as shown by the affidavit filed, the motion was overruled by the court, and judgment rendered on the verdict.

And hence the cause comes to this court upon writ of error on the part of the defendants, who make the following assignments of error:

1. The court below erred in giving the 6th, 7th and 8th instructions asked by the plaintiff. .

2. The court erred in modifying the 12th and refusing the 15th instruction asked by the defendants.

3. The court erred in overruling the defendants' motion for a new trial.

The 6th, 7th and 8th instructions to the jury given by the court below on behalf of the plaintiff are correct legal propositions, and the first assignment of error is not well taken.

With respect to the 12th instruction asked by the defendants, we can perceive no error in the action of the court in modifying the same, and think that the instruction as modified and given by the court, lays down the law correctly. Nor do we think there is any error in the refusal of the court to give the 15th instruction asked by the defendants, as inapplicable to the facts of the case as developed by the evidence.

The grounds of defense relied on by the defendants in this action were the two following:

1. That the plaintiff greatly contributed to, if he did not by his own negligence cause, the injury of which he complains.

2. That the said injury was the result of natural causes, and would have occurred had no railroad passed through the plaintiff's land.

The general rule with regard to concurrent negligence is that the party seeking legal redress must not only show his adversary to be in the wrong, but must also be prepared to prove that no negligence of his own has tended to increase or consummate the injury. A party in an action on the case for negligence, cannot recover damages which have resulted from his own negligence and want of care. He must show himself in the right and the defendant in the wrong; that he has performed his duties and that the defendant has neglected his, and that the damages are the legitimate consequence of the negligence of the defendant.

The above stated general rule as to concurrent negligence is subject to the modification or qualification that where one, in the lawful use of his property, put in an exposed or hazardous position, and in more than ordinary danger from the lawful acts of others, as for instance, if he build near a railroad, still he does not lose his remedy for an injury caused by the culpable negligence

of others. Cook *v.* Champlain Transportation Co., 1 Denio, 91. And the same principle has been recently declared in England, where it has been said that the defendant is not excused merely because the plaintiff knew that some danger existed, and voluntarily incurred such danger, provided the defendant's negligence was the cause of the damage, the whole matter being for the consideration of the jury. Clayards *v.* Dethick et al., 12 Q. B., 439.

To prevent a recovery, the plaintiff's negligence must proximately contribute to the injury. If the sole immediate cause of the injury was the defendant's negligence, the plaintiff can recover, notwithstanding previous negligence of his own. The Vicksburg & Jackson R. R. Co. *v.* Patton, 31 Miss., 156; Trow *v.* Vermont Central R. R. Co., 24 Vt., 487; Kerwhacher *v.* The Cleveland, Columbus & Cincinnati R. R. Co., 3 Ohio St., 172; Pittsburg, Fort Wayne & Chicago R. R. Co. *v.* Karns, 13 Ind., 87; Richmond *v.* Sacramento Valley R. R. Co., 18 Cal., 351; Stucke *v.* Mil. & Miss. R. R. Co., 9 Wis., 202.

In the case above referred to of Trow *v.* Vermont Central R. R. Co., *supra*, the court say: " Where the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems to be now settled in England and in this country. Therefore, if there be negligence on the part of the plaintiff, yet if, at the time when the injury was committed it might have been avoided by the defendant in the exercise of reasonable care and diligence, an action will lie for the injury."

It is laid down in Isbell *v.* New York & New Haven Railway Co., 27 Conn., 393, a leading case upon that subject, that the negligence on the part of the plaintiff, which will preclude his recovering damages for the negligence of the defendant, must be the actual proximate cause, contributing, to some extent, directly to the injury, and not a mere technical wrong, contributing either incidentally or remotely, or not at all, towards the injury. 2 Redfield's Am. Railway Cases, 474.

Questions of negligence are always to be submitted to the jury,

unless where the facts are undisputed and the result of those facts unquestionable, either as proving or disproving such negligence. And where the facts are conceded, but the inference in regard to negligence is still doubtful, depending upon the general knowledge and experience of men, it is the judgment and experience of the jury and not of the judge, which is to be appealed to.   Gaynor *v.* Old Colony & Newport Railway, 100 Mass., 208, and 2 Redfield's Am. Railway Cases, 554.

It has been held, and, we think, upon correct principles, that if a railroad company, by making imperfect sluices or other passage for streams over which their road passes, the land of the adjoining proprietors is injured, the company would be liable to the owners of the land for the damages sustained by overflowing their land, in consequence of such imperfect sluices for the passage of the water, or other obstruction to the stream.   In the case of Whitcomb *v.* Vermont Central R. R. Co., 25 Vt., 49, the plaintiff was declared entitled to recover damages which were occasioned by the want of a sufficient culvert to pass the water, which it was the duty of the defendants to build.   1 Redfield on Am. R'y Cases, 297.

In the case under consideration, whether the plaintiff, by his own act, contributed proximately to the injury complained of, or whether it was the result of natural causes or was produced by the defendants in the erection of the breakwater on Lamar creek, and an insufficient culvert for the passage of the water of said stream, or by their obstructing in any other way the passage of the water in the channel of said creek, by which plaintiff's land was overflowed, were questions proper for the consideration of the jury.   There was great diversity of opinion among the witnesses as to the cause of the damage to plaintiff's land, as in such cases may be honestly entertained by the witnesses; yet, it is the province of a jury of good honest men of practical sense to scan and weigh the evidence, and ascertain from the whole testimony the amount of proof, and find their verdict accordingly; and when thus found, where no principle of law has been violated, and where there is no ground to impeach it for prejudice, partiality or

corruption, courts have always been reluctant to disturb such a finding of the jury. This is one of those cases where the mind cannot repose with entire confidence and certainty upon a conclusion in favor of either party. And in such case the verdict will not be disturbed. Watson *v.* Dickens, 12 S. & M., 608.

The credibility of witnesses is a matter exclusively for the determination of the jury, and where the evidence and the propriety of the verdict depends upon the weight to be given to the testimony of the respective witnesses, and the inferences to be drawn from the facts proven, and from the conduct of the parties, a new trial will not be granted, except for clear and manifest error in the rulings of the court. Wood *v.* Gibbs, 36 Miss., 559.

Upon the whole, we do not think the court below erred in overruling the motion for a new trial.

The judgment should be affirmed.

SIMRALL, J., delivered the opinion of the court on the reargument.

It is the duty of a railroad company in laying its roadbed across a stream, to so construct it as to allow a free passage for the water. If trestles, sluices or culverts are adopted, they should be placed so as not to needlessly impede the flow of the current. The state, in the exercise of its power of eminent domain, grants, upon certain terms, the authority to the company to enter upon the lands of the citizens and appropriate so much as may be needed for the use of the road. But in making that appropriation, no useless or avoidable damage must be done to the adjacent lands. Plainly, if the defendant had filled up the crossing of Lamar creek, or, by insufficient or inappropriate structures, had caused the overflow of the plaintiff's field, it would be liable for damages for the injury, unless the plaintiff, or those from whom he purchased, had acquiesced in and consented to the acts done or unless the plaintiff or his vendor had unequivocally abandoned the old channel, by a diversion of the water into a new one. Mason's right to the continued flow of the water, in its natural

channel, could only be extinguished by operation of law, the act of God, or the act of himself.   Co. Litt., 146, 147 ; Taylor *v.* Hampton, 4 McCord, 101.   If the abandonment or extinguishment be predicated on the act of the party, something must be done absolutely destructive of the right, or which is incompatible with its exercise.   Illustrations are given by the learned judge in 4 McCord, *supra :*   " If a person be the owner of a house with ancient lights, which no person has a right to obstruct ; if he erect a house or put up a wall directly covering his windows, has he not extinguished his light himself as effectually as if he had blown out his candle ? "   Chancellor Kent says that the cessation to use the right will destroy it, provided the discontinuance be absolute and decisive, and unaccompanied with any intention to resume it within a reasonable time.   3 Kent Com., 130 ; Corning *v.* Gould, 16 Wend., 531.

With what intention the ditch was dug, is an important inquiry.   Was it designed to change completely the channel of the creek ? or was it auxiliary to the natural channel, to aid in the quick passage of the water into Gray's creek ?   Was the cutting of that ditch an unequivocal and decisive act, evincing a purpose to abandon the old channel, and thus releasing the defendant from the obligation to keep it open at its crossing ? These inquiries ought to have been left to the jury.   The thing done by Mason was not of that decisive and unequivocal character, as that the law could pronounce as to its effect.

Boykin owned the land in 1852, and sold to Mason in 1855. At that time there was a hillside ditch along the western side of the valley ; from this a ditch was cut within 100 feet of the railroad, and continued parallel with the railroad, intersecting Lamar creek, near the mouth of Gray's creek.   The trestle built in 1865, from 80 to 100 feet in width, somewhat obstructed the stream and caused the channel to begin to fill up with sand, above and southwardly.   One or two years afterwards, Mason extended the ditch cut by Boykin, to Lamar creek, on the south,   This was done in order to repair the defective draining caused by the ob-

struction. In 1861, the defendant put an embankment in place of the trestles, and a culvert four feet in diameter. In times of high water this opening was wholly inadequate to the sufficient flow of the water, and deposits were rapidly made. The testimony tends to show that prior to 1861, as the water proved more and more difficult to pass under the railroad, Mason, by ditches, attempted to provide that mode for their escape. These seem to have answered the purpose reasonably well, until the trestle was filled up with dirt, and an insufficient culvert built. After that the damage by overflow and deposit of sand was rapid and continuous.

The testimony on this point, instead of proving an abandonment or other extinguishment of right, tends to prove the use of artificial means adequate to relieve his land, which, but for the embankment and small sluiceway, would have been sufficient. The defendant does not claim a license, but relies on the conduct of Mason. That should have been referred to a jury to pass upon its quality and force. The plaintiff had, in a series of instructions in various forms of expressions, presented the idea to the jury, that if the defendant had, since 1861, by the negligent repair of its roadbed, by filling up the channel of Lamar creek at its crossing, or by unsuitable structures at Gray's creek, causing the water to back up and overflow, or by constructing a breakwater, or leaving an insufficient opening for the passage of the water under its roadbed, then the defendant would be liable for damage to the plaintiff's land in consequence thereof.

The plaintiff's 10th instruction imposes a qualification on the rules of law laid down in the prior charges, which informs the jury that the defendant is not responsible for the consequences of the acts, or any of them, if Mason assented thereto in fact or by implication, or contributed thereto by his own negligence.

Express consent or implied assent waives the original right. Implied consent is manifested by some act done by Mason, which is absolutely incompatible with the right claimed, and which amounts in its effect to an extinguishment or abandonment of it.

The act must be accompanied with an intention to abandon permanently. Ang. on Serv. and Ease., 632, 633. The effect of a cesser of use, coupled with an act clearly indicative of an intention to abandon the right, would be the same as a release. Ang. on Water Cour., § 243.

The act relied upon by the defendant as implying an assent by Mason to the erection at Lamar creek crossing, and as evincing an abandonment or extinguishment of his right, is the diversion of the stream into a new channel. To work that consequence there must be also an intention permanently to abandon the old channel. If the diversion was made with an intent to make it permanent, then within the sense of the 10th instruction there was an implied assent of Mason that the defendant might treat the old channel as abandoned, and they might repair their road bed on that assumption.

The 15th prayer for instruction, refused by the court, embodied the same idea, but in different language, but perhaps in terms too broad to present the true proposition of law applicable to the testimony. It affirms a right in the defendant to put the obstructions complained of across the channel, if before that was done "the plaintiff himself had diverted said watercourse, and caused it to run in a different channel on his own land," etc. The instruction assumes that the diversion was *ipso facto* an extinguishment or abandonment, and did not present the point to be inquired into by the jury, whether this act was intended to work that result.

It might, in another aspect, have confused and misled them, by a suggestion that but little importance should be attached to that position of the testimony tending to show that the new channel was intended to be merely in aid of the old.

Manifestly the jury placed their verdict on the testimony that the obstructions at Lamar creek crossing caused the damage, and that Mason had not expressly, nor by any act of his, impliedly waived, abandoned or extinguished his right to the water passage under the roadbed.

They accepted that testimony as the true explanation and cause

of the injury to the land, and rejected that which referred it to the deposit of sand, etc.

After a second review of the instructions and the testimony, it seems to me that the law necessary to guide the jury in every view of the testimony was expounded to them.

That substantially the true rule embodied in the 15th prayer is contained in the 10th charge for the plaintiff, and that the 15th prayer, if given, might have had the effect of confusing the jury, for the reason above stated.

The verdict is supported by those witnesses upon whom the jury relied as furnishing an explanation of the causes of the injury.

Other witnesses referred the injury to other causes. It was the province of the jury to decide between them.

I am of opinion that the verdict and judgment should stand.

TARBALL, J., dissenting.

Upon petition therefor a reärgument has been had in this cause, and it is now before this court for final disposition.

On the trial in the court below, the 15th instruction asked for the defendant in the action was refused. The propriety of this action of the circuit court was the particular subject submitted by this court for discussion in the reärgument. The question is, whether there was evidence which required the giving of the instruction named. That instruction is in these words: "If the jury believe from the evidence that in 1861 the defendant filled up a trestle on which the roadbed was originally built, and under which a stream or creek passed, and made only a small culvert in lieu of said trestle, not sufficient to pass the waters of said creek, still if they also believe from the evidence that before said trestle was filled up, the plaintiff himself had diverted said watercourse, and caused it to run in a different channel on his own land, entirely out of the line of the road or its right of way, then the road had a right to fill up said trestle, if by so doing the strength and safety of said roadbed was increased so as better to answer the purpose of said road, and give greater security to passengers and freight."

The question of fact involved in this instruction is, whether "the plaintiff himself had diverted said watercourse, and caused it to run in a different channel on his own land, entirely out of the line of the road or its right of way?" The proposition is, not whether there was a partial diversion, nor whether the canal was a mere aid to the channel under the road, but the question of fact propounded is as to the whole stream, and its entire diversion to a new channel on the land of Mason, entirely out of the line of the road or its right of way. This was regarded in the court below, and so treated by the counsel, as the vital proposition of the instruction. It was also so regarded by this court on the original hearing, when the refusal to give the instruction was approved, upon the idea that there was no evidence to warrant it.

Referring to the overflow of his land, Mason testified that "about 1856 or 1857, plaintiff extended the ditch cut by Boykin to an intersection with Lamar creek on the south, to relieve himself from this overflow. About the same time he commenced cutting a ditch across an elbow of Lamar creek, south of where the breakwater now is, and running about 300 yards, the northern mouth of which is not, however, opposite the extension of the Boykin ditch, but is a short distance above it, and the water from this ditch emptied into Lamar creek, and not into the Boykin ditch. Both these ditches were enlarged from time to time until 1858, when the connection was formed." * * "The first ditching that I did was to open a channel for the water of Lamar creek to run in from near the southern boundary of my bottom land, through the bottom, extending north until it connected with the channel of Lamar creek at the point where the said creek turned in an easterly direction, and was crossed by the railroad where the breakwater now is. The ditch which I cut first terminated on the north a hundred yards or more from the southern end of the Boykin ditch, which was parallel with the road, but the southern end of the Boykin ditch, as extended to Lamar creek, was not exactly opposite the first ditch cut by me, but the two were soon connected by the water of Lamar creek itself, washing a channel

between the two. This ditch, when opened through the entire bottom, was sufficient to carry off the water that ran down Lamar creek, except when rain had recently fallen. In the winter and spring there was generally running water in Lamar creek, but it dried in summer. From time to time the sand, and leaves, and drift, which had been deposited in this ditch, were cleaned out." * * "When a heavy rain fell, the bottom was overflowed, but the water soon ran off, and I always made good crops on this bottom." * *

"The ditch through the bottom was kept cleared out, so that the flow of the water through it was not obstructed up to the time I left home for the army."

Mr. Brewer, who, as contractor with the railroad, built the culvert on the land involved, testified, that when he went to work at that spot, "there was then no depression of the earth from a ditch, which witness saw to the west of the road, and not distant from it, or any appearance indicating any sort of channel for the outlet of water from the said ditch to the road bed and under it, and witness saw no necessity for a culvert at this place, and he then stopped his work until he could see the superintendent, from whom he had received his instructions. He soon saw him and asked why he wanted a culvert at this point. His reply was that he had not selected this place, but that it was one of the places that had been marked for one, and that witness had better put it in, which was accordingly done. To ascertain the proper place for the culvert, he procured a long stick and walked along the roadbed, putting the stick down to the surface, so as to ascertain the point of greatest depression, and that point was where the culvert was built."

No opinion is intended to be expressed as to the weight of this evidence, nor upon the merits of the question or of the case, nor what the verdict ought to be; but these quotations are made to show the propriety of the rejected instructions, at least as to its proposition of fact. It was also consistent with, and a necessary complement to, the other instructions, and with the whole theory

of the case, on the trial and down to the reärgument.   The general propositions presented by the instructions for the plaintiff were these:   As to the sufficiency of the openings for the passage of the water;  whether the road closed up the stream;  as to the reasonableness of the openings made;  no right in the road to produce unnecessary injury;  the effect of the breakwater and damages therefrom;  the carelessness and negligence of the road;  the care of the plaintiff;  contributory neglect;  damage from filling Gray's creek by the road;  the propriety of filling Lamar creek;  whether the filling of Lamar creek was improper and illegal, and whether plaintiff assented thereto, or contributed thereto.   While for the defendant the following propositions were submitted:   The burden of proof is with the plaintiff;  evidence of experts;  duty of plaintiff as to care of his land and ditches;  right of the road to build trestle, etc.;  effect of granting the right of way;  no right to damages necessarily resulting from building road;  proper and reasonable use of right of way;  not incumbent on the road to dig and keep in repair a ditch across the land of plaintiff;  contributory negligence;  whether the land was not ruined prior to the breakwater, and if so, then no damage resulted from its erection. Then follows the fifteenth instruction, which was refused, the proposition of fact therein being as to the diversion of Lamar creek by Mason.

Disclaiming any intention of either discussing or expressing an opinion upon this whole case, there are, nevertheless, a few leading, undisputed, unquestioned facts, which contribute to the conclusion that the fifteenth instruction ought to have been given:   The right of way was granted by Boykin in 1852;  Mason purchased of Boykin in 1855;  Boykin's ditch was connected with Lamar creek by Mason, who also cut an elbow ditch, 1856-7-8;  channel of Lamar creek filled up and deserted prior to 1861;  no damage until after 1863, when the place was deserted and ditches neglected; and after which the substantial damage was done;  Mason, on his return from the war, found the land ruined in 1865; · the breakwater was erected in 1870-1, and it is also a positive and almost

conceded fact that had the ditches been kept clean from 1862–3 on, there would have been no damage to the land to complain of. This is almost too clear to be controverted, as I read the record.

To excuse the neglect of the ditches after 1863, the plaintiff, on the trial, proved the demoralized condition of labor, and the consequent inability to take care of the ditches, as the reason of such neglect, thus conceding the most material point in the case.

It is now, for the first time upon the reärgument, suggested that this case is governed by the doctrines of easements and servitudes. The case was tried in the court below and argued here, without any referencce to these rules.   From the definition of an easement it seems to me, its doctrines have no application to the case at bar. An easement is a privilege or convenience which one has over the land of another.   To constitute it, two estates are necessary, one giving and the other receiving the advantage.   Running water over one's own land is not an easement, but a part of the realty, and passes therewith.   Angell on Watercourses, § 141 et seq.

A water course over one's own land may be defined to be an incorporeal hereditament annexed to the freehold.   The right to a watercourse over, or to take water from, the land of another is an easement.   The right of the railway over the land of Mason is but an easement, or right of way over his land.

According to the text writers, it would seem that the right of Mason to the flow of the water of Lamar creek in its old channel over what is now the line of the railway, is not an easement. Taking the definition from the text books, an easement is not created as in the case at bar.   Waiving further discussion, however, upon the question now propounded, and the expression of a positive opinion, it is observed that if the rules now invoked are applicable, then this is not a case of mere nonuser, but one where the nonuser is accompanied by acts of both parties, indicating an abandonment, or extinguishment of the right.   " The rule of the civil law most undoubtedly is, that the party himself to whom any sort of servitude is due may, short of the period of prescription, effect its extinguishment by merely suffering the erection of ob-

structions of a permanent and solid kind, such as edifices and walls; and *a fortiori*, if the act of obstruction be done by the party to whom the servitude is due. The rule of common law, as laid down by Kent, is: There must be a total cessation of the exercise of the right to the servitude during the entire time necessary to raise the presumption of extinguishment, or there must have been some permanent obstacle permitted to be raised against it, and which absolutely destroyed its exercise. There is evidence that this was done in the case at bar, and the 15th instruction presents the question to the jury. " If the act which prevents the servitude be incompatible with the nature or exercise of it, and be by the party to whom the servitude is due, it is sufficient to extinguish it; and if it be extinguished for a moment it is gone forever." Again, says he: " It is a wholesome and wise qualification of the rule, considering the extensive and rapid improvements that are everywhere making upon real property." Angell on Watercourses, § 247, and references therein; 3 Kent, 448, 449; 34 Me., 394. " The period of time is only material as one element from which the grantee's intention to retain or abandon his easement may be inferred against him." Angell, § 243 a.

The duty of a railway company in constructing its road over a watercourse on private lands, in the absence of positive enactment, is defined in Angell, § 465 b.

A stream of water having been turned, " it is the duty of the owners of such lands, after the stream has been properly turned, to watch the future action of the water upon their own lands, and to cast in whatever may be necessary for the protection of the banks, and the company are not required to protect them from the effect of the water at [all times." Angell, § 465 f; Corning *v.* Gould, 16 Wend., 531.

In the case at bar, there is evidence to show that the plaintiff diverted the water of Lamar creek from its old channel, and the road erected permanent obstructions, with the knowledge and without objection of Mason.

Taylor *v.* Hampton, 4 McCord, 96, is a leading case in this country on the subject under consideration. Some of the rules declared are these : Every privilege which one man claims in derogation of the rights of another, is viewed with jealousy by the law, and it will require it to be confined to the prescribed limits and specific objects of the grant. The right to overflow the lands of another by grant or prescription is an incorporeal hereditament, and if extinguished for a moment, is gone forever. A servitude may be extinguished by the act of God, the operation of law, or by the act of the party. The act of the party shall always be construed most strongly against himself. A servitude may be extinguished by a renunciation of the party, either express or implied, as by permitting the party from whom the servitude is due, to build on the property such works as presuppose an abandonment of the right. When the act which prevents the servitude is by the party to whom the servitude is due, it is wholly extinguished; but when it is by the act of another, it is only suspended. An act incompatible with the nature or exercise of the servitude is sufficient to extinguish it ; so the creation of a new inconsistent right by the party himself, will extinguish the former right.

These quotations will suffice for the purpose for which they are made, viz, not to declare rules, but to show the necessity of further investigation. The case was not tried with reference to the doctrines now invoked, but in the light of rules which have become familiar in our state.

In the view which I take of this case, the court erred in refusing the 15th instruction for defendant, because,

1. The evidence required the submission of the question of fact therein propounded.

2. The other instructions were incomplete without it ; its proposition of fact was necessary to render the others consistent and harmonious and the finding just.

3. These reasons are confirmed by the other considerations herein suggested.

4. And, to my mind, justice requires the further investigation and discussion of the facts and the law of this case.

There should be a new trial.