# Wytheville.

## COOK v. SEABOARD AIR LINE RAILWAY.

### June 13, 1907.

1. WATERS AND WATER COURSES—*Change of Course.*—The owner of land may change the whole course of a stream within the limits of his own land, provided he restores the water, undiminished, to the original channel before leaving his own premises, and other persons are not injured by such diversion.
2. WATERS AND WATER COURSES—*Overflow—Change of Course.*—The right of a land owner, under circumstances like those in this cause, to change the course of the superabundant water produced by freshets, is not less clear than his right to change, on his own land, the course of the ordinary stream.
3. RAILROADS—*Flood Waters—Culverts—Case at Bar.*—Where the proprietor of land changed the course of a stream through his own land and then returned it to its original channel, before leaving his land, and constructed a wasteway, to carry off the surplus water, in case of freshets, both of which appeared to be permanent, and some years thereafter a railroad company constructed its road-bed across said channel and wasteway, it was the duty of the company to provide for the escape of the water through the wasteway as well as through the channel, although the proprietor may have originally intended to change the location, at some future time, of said artificial channel. The company should have adapted itself to existing conditions, which could not thereafter have been changed to its prejudice. Flood water, which overflows from a natural stream, is not surface water, and a railroad company is liable in damages for injuries resulting from its failure to construct proper culverts to carry it off where its embankments would otherwise obstruct its passage.

Error to a judgment of the Circuit Court of Chesterfield county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

*Lunsford L. Lewis* and *J. M. Gregory,* for the plaintiff in error.

*E. Randolph Williams* and *E. H. Wells,* for the defendant in error.

Harrison, J., delivered the opinion of the Court.

This action was brought by Lydia W. Cook against the Seaboard Air Line Railway for the recovery of damages alleged to have been sustained by her, by reason of the skillful and negligent construction of its railroad bed on its right of way through her premises.

The plaintiff is the owner of a farm in Chesterfield county, containing about three hundred acres, upon which she has for some years operated a valuable and profitable granite quarry. There flows through this tract of land a small stream of water, which, in its original course, flowed through a portion of the quarry, so that in opening the quarry it became necessary to divert the stream from its natural channel. This was accomplished by constructing a canal which carried the water around the east side of the quarry, and restored it, below the quarry, to the natural bed of the stream before it had left the premises of the plaintiff. There was also constructed by the plaintiff a waste way, connected with the canal some distance below its head, for the purpose of carrying off the superabundant water whenever there was a freshet.

At the time the defendant railway company acquired its right of way and constructed its road-bed, this canal and waste way had been continuously in use for a number of years, and both, as well as the purpose for which each was designed, were as apparent as the existence of the quarry itself. The right of way condemned by the defendant crossed the wasteway and ran from that point for a distance of one hundred and fifty yards parallel with and near to the canal, the canal being be-

tween the railroad and the quarry. No culvert was constructed or other provision made for the passage of the water across the right of way of the defendant company, which had theretofore been carried off through the wasteway provided by the plaintiff for that purpose, but earth, stone and gravel were deposited by the defendant on the west side of its right of way and near to the east bank of the canal, so that the superabundant water, in times of freshets, was thrown upon the plaintiff's premises and her quarry flooded.

Under the instructions given by the Circuit Court there was a verdict for the defendant which the court refused to disturb, on a motion by the plaintiff for a new trial, and the judgment complained of was rendered.

The crucial question in the case involves the action of the court in giving its fourth instruction, which is as follows: "If the jury believe from the evidence that Mrs. Cook, prior to the building of the railroad, changed the course of the stream originally and naturally passing over the site of her quarry in such a manner as to alter the face of nature and fix for all time, as far as she was concerned, the said stream in a new and permanent channel, then this new bed or channel became to all legal intents a natural water course which the railroad company was bound to provide for and has no right to obstruct; and if they believe further that the said company—the proprietor of the opposite bank of said stream—did alter the course of and obstruct the same by raising the level of or erecting a dike upon said bank, so that in time of flood the water was impelled upon the opposite shore, whereby Mrs. Cook's quarry was submerged and her property injured, then they must find for the plaintiff, Mrs. Cook, in such sum as will compensate her for the injury thus inflicted. But on the contrary, if the jury believe from the evidence that the canal and wasteway constructed by Mrs. Cook through her lands was not a permanent change in the bed of the natural stream fixed for all time as far as she was concerned, and that the purpose and intent was to remove the

same from place to place, or time to time, as the convenience or necessities of the quarry might demand, then said canal and wasteway was not a natural stream for which the railroad company was bound to provide a passage. In that case the law imposed no obligation on said company to preserve or continue said wasteway, and it was lawful for it to raise or erect a dike upon the bank of said canal, or otherwise obstruct the same, as the convenience or safety of its business required."

That the stream in question is a natural stream is not disputed; and that the plaintiff had the legal right to divert the water and turn it into an artificial channel, as she did, is not and cannot be denied; it being a settled principle of the common law that a proprietor may change the whole course of a stream within the limits of his own land, provided he restores the water undiminished to the original channel before leaving his premises, and other persons are not injured by such diversion. Kent's Com., Vol. 3, p. 439; Farnham on Waters, Vol. 2, p. 1645; *Dilling* v. *Murray,* 6 Ind. 324, 63 Am. Dec. 385; *Stein* v. *Burden,* 29 Ala. 127, 65 Am. Dec. 394; *Canfield* v. *Andrews,* 54 Vt. 1, 41 Am. Rep. 828.

The right of the land owner, under circumstances like those of the case at bar, to change the course of the superabundant water produced by freshets is not less clear than her right to change on her own land the course of the ordinary stream. *Burwell* v. *Hobson,* 12 Gratt. 322, 65 Am. Dec. 247. This is an important and instructive case, and the principles there settled are in many material particulars applicable to and sustain the view taken in the case at bar.

As stated in the brief of counsel for the defendant railway, instruction No. 4 tells the jury "that the obligations of the railway company with respect to the overflow or to the flood-water in the plaintiff's canal were to be determined by them upon their conclusion as to whether the diversion of the natural stream through the plaintiff's property was a temporary or a permanent diversion." In other words, that the obligation of

the defendant company to provide a passage across its right of way for the water that had theretofore flowed through the plaintiff's wasteway, and the right of the plaintiff to recover the damage resulting to her from its failure to provide such passage, are made to depend upon the purpose of the plaintiff to continue the artificial channel exactly as it then was "fixed for all time, so far as she was concerned."

The principle announced by this instruction is not applicable to the case at bar. That principle is applicable when the question to be determined is whether or not a right has been abandoned. If, for example, the defendant company had built its road across the empty bed of the original stream when no provision for carrying off water was necessary, and the plaintiff had afterwards turned the water back into the original channel, her right to do so would depend upon whether or not she had diverted the water into the artificial channel with the intention of permanently abandoning the old channel.

The case of *Miss. Cent. R. Co.* v. *Mason,* 51 Miss. 234, is a well considered case illustrative of this principle. There it was held that to relieve a railroad company from the duty of maintaining a passage across its right of way for a watercourse, on the ground that the adjoining owner had changed the course into a new channel, the intention to make a permanent change must be evidenced by an unequivocal and decisive act evincing a purpose to abandon the old channel. In that case the road was built across the old channel.

The case at bar is very different from that to which the principle announced by instruction No. 4 is applicable. There was evidence tending to show that some years before, when the canal and wasteway were constructed, the plaintiff contemplated, in the event the future development of the quarry and the needs of the business should require it, to move the canal further back on a line about where the defendant's road has since been built; when, however, the road was built, any intention to change the location of the canal had, from necessity, to

be abandoned, as the canal lay between the railroad and the quarry, and within a few feet of both—indeed, for some distance the defendant's right of way adjoins the canal, thus creating an impassable barrier to any further movement of the canal in that direction. But, if this were not so, the plaintiff, having, as we have seen, the right to divert the stream, on her own land, from its original course to the new channel, would have had an equal right to change the artificial channel, as the needs of her business required, provided the change was made without injury to others. Yet the theory of the instruction is that the plaintiff could not recover unless the canal and wasteway constructed by her was in fact a permanent location, "fixed for all time as far as she was concerned."

It was a matter of no moment to the defendant company what may have been the intention of the plaintiff with respect to future changes in the course of the stream upon her own land. After the defendant company had built its road, adapting it to the then existing conditions, no change could have been thereafter made in the location of the stream affecting injuriously its rights. To all appearances, when the road was located the then existing arrangement, which had been in existence for a number of years, was a permanent one, and the company not only had the right, but it was its duty in constructing its road, to adapt itself to conditions as they then existed. It could have safely provided a passage for the water from the wasteway, because, having adapted itself to the state of things created by the plaintiff, she could not thereafter have changed those conditions to the injury of the company without its consent. The plaintiff could not afterwards have changed the location of the canal or wasteway and required the company to construct a culvert at another place. Upon familiar principles she would have been estopped from making such a demand.

In 3 Farnham on Waters and Water Rights, sec. 827c, it is

said: "If a land owner makes a change in the course of a stream which to all appearances is permanent, and holds out to the world the representation that such condition is permanent, he will be bound by his act, and after other persons have acquired rights by changing their positions upon the faith of such representations, he will not be permitted to deny that the stream is not flowing in its true channel." And in the same connection it is said: "When a channel is cut to straighten a water course, and the water flows in the new channel for a number of years, a railroad company, in constructing its road through the property is bound to treat the new channel as the water course and cannot obstruct it to the injury of adjoining owners."

The water which, in times of freshets, flowed through the wasteway, was, so far as it concerned the obligations of the defendant with respect thereto in constructing its road, to all intents and purposes natural water, and, upon the principle announced in *N. & W. Ry. Co.* v. *Carter,* 91 Va. 587, 22 S. E. 517, it was the duty of the defendant company to make provision for it. The authorities hold that the flood-water which overflows from a natural stream is not surface water, and that the failure of a railroad company to make culverts in an embankment constructed by it for its road-bed, on lands subject to such overflow, of sufficient size to permit the water behind the embankment to rise and fall as fast as the stream does, is negligent and unskilful construction, making the company liable in damages for resulting injury. *Uhl* v. *Railroad Co.,* 56 W. Va. 494, 49 S. E. 378, 68 L. R. A. 138, 107 Am. St. Rep. 968; *O'Connell* v. *Ry. Co.,* 87 Ga. 246, 13 S. E. 489, 73 L. R. A. 394, 27 Am. St. Rep. 246. And this court has held that even surface water, when flowing in a natural channel, must be dealt with by a railroad company in constructing and maintaining its road as if it were water flowing in a natural stream. *N. & W. Ry. Co.* v. *Carter, supra.*

The court having erred in giving to the jury instruction No. 4, the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial, not in conflict with the views expressed in this opinion.

*Reversed.*