# Staunton.

## HARRIS MOTOR COMPANY *v.* PULASKI FURNITURE COMPANY.

September 20, 1928.

The opinion states the case.

*John S. Draper, W. S. Tipton* and *John W. B. Deeds*, for the plaintiff in error.

*Gilmer & Wysor*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The Harris Motor Company sued the Pulaski Furniture Company, alleging damages caused by the construction of a building by the defendant on its own premises so as to cause the diversion and retention of surface water upon the premises of the plaintiff, whereby its property has been greatly damaged.

There was a jury trial, the defendant demurred to the plaintiff's evidence, which demurrer was sustained, and there was final judgment for the defendant.

The grounds of the demurrer are thus stated:

"1. That the plaintiff has averred in settling the pleadings that it bases its claim for damages upon obstruction of surface water only.

"2. That this is a controversy between private adjacent property owners, and that in the exercise of dominion by the defendant over defendant's own property, the evidence fails to show that the defendant exercised its rights in a wanton, careless, negligent, or unnecessary manner.

"3. That the defendant had the right to construct and maintain its buildings on its own property and if it did so in a proper and reasonable manner without inflicting unnecessary injury on the plaintiff, there is no liability and the evidence shows that defendant has committed no legal wrong upon the plaintiff in this respect.

"4. That the evidence as well as the avowal of the plaintiff upon framing the issues in this case shows that surface water only was diverted or obstructed by the buildings of the defendant, and that said buildings were constructed and have been maintained in a reasonable, proper and careful manner, and with due regard to the rights of adjacent land owners, including the plaintiff."

The evidence shows that the plaintiff owns the lot fronting 150 feet on the east side of Washington avenue and north side of Fourth street, in the town of Pulaski, upon which it erected a garage in 1922, and later an addition thereto, covering the entire surface of its own lot. The defendant acquired the land immediately east of the plaintiff's lot, but twice as wide—that is, 300 feet—extending across and including part of Fourth street, and 500 feet long, running eastwardly through the block to the next street, Madison avenue, upon the west side of which it fronts 300 feet. Upon this lot the defendant, in 1924, erected its building, 300 feet wide and 490 feet long, to within ten feet of the eastern wall of the plaintiff's building. There is an alley on the north side of both lots, extending from Washington avenue to Madison avenue.

The accompaning sketch shows the relative size and location of the lots and buildings referred to.

That portion of Fourth street west of Madison avenue and extending westwardly to a point 150 feet east of Washington avenue has been, on the petition of the plaintiff and others, formally discontinued and abandoned to the abutting property owners by the town council, apparently for the reason that it had never been used as a street, and that such use would never be either convenient or necessary.

The defendant thus, as the owner of the abutting

Buildings of Pulaska Furniture Company indicated by the waved lines.
Buildings of the Harris Motor Company indicated by shaded lines.
Portion of Fourth street closed indicated by dotted lines.
This sketch was originally drawn on a scale of 1″ to 200 ft.

land, became the owner of that part of Fourth street (500 feet long) so abandoned. The building of the defendant, 300 feet wide and 490 feet long, covers all but ten feet of this abandoned street area.

It is undisputed and shown by plaintiff's evidence that the lowest point of the area of the combined lots is at the northeast corner of and is now covered by the plaintiff's own building; that the plaintiff's building is greatly damaged by the dampness and accumulation of surface water under the building; that before the construction of the defendant's building this surface water would flow off naturally. It appears that the centre of Fourth street had been slightly raised and that there were shallow depressions or ditches on its sides, through which some of this rainfall previously drained; that there were slight depressions also on the defendant's lot, through which water would also drain in time of heavy rainfall; that the abandoned area of Fourth street, together with the adjacent area now covered by the defendant's building, was previously used as a baseball field, and that the defendant so constructed the foundation of its building as to prevent this flow of the surface water over its lot. The area involved was, as a whole, level, with slight natural slopes and depressions. Some of the water draining towards Madison avenue east and the Hunt ditch north. This is quite apparent from the testimony of the plaintiff's witness, Snyder, who says, referring to Fourth street:

"Q. Was the location of that street about the lowest place in that section or not?

"A. Well, I do not know about that. I should think there would be very little difference in the lay of the ground all the way through.

\* \* \* \* \* \*

"Q. Tell the jury whether or not—what there was on the surface of the land now occupied by the factory extending between Fourth street and the ditch in which the natural stream flows east and west, known as the Hunt ditch?

"A. It was covered with grass—natural drains.

\*      \*      \*      \*      \*      \*

"Q. Tell the jury—just give your idea, is it not a fact that the location of Fourth street through that block is on higher ground than any of the ground between Fourth street and the northern boundary of this furniture building? Is not Fourth street on higher ground than any of that between Fourth street and the north side of the building?

"A. I could not say positively. I never had a level on it. It is a pretty level piece of ground, about as level as I ever saw, yet it has drain.

"Q. I want you to explain to the jury what you mean by drain.

"A. A pitch.

"Q. All land has pitch. If not perfectly level, it has pitch, and that is what you mean by drain?

"A. Yes.

"Q. You do not mean there was a ditch that carried the water?

"A. There were natural depressions there. I do not know how they came to be there.

"Q. Do you consider them drains?

"A. Certainly.

"Q. I am asking if there is any kind of depression, natural or otherwise, running through that block carrying water from Washington avenue through the block in any well-defined channel at all?

"A. There were some depressions there, but whether they would carry the water I do not know.

"Q. Was there anything like a continuous channel or depression anywhere?

"A. As I remember, there was.

"Q. You mean a depression that carried the water down? Do you mean the whole bottom or a ditch?

"A. I mean the full length, parallel with Fourth street.

"Q. How about the width of it?

"A. The depression?

"Q. Yes.

"A. Two or three feet wide.

"Q. Are you thinking about the Hunt ditch?

"A. No, sir.

"Q. When did you see that depression?

"A. I was running a car in there.

"Q. Is that the only time you ever saw it?

"A. That was the only time I had occasion to be there.

"Q. Learning to run the car and saw it?

"A. Yes.

"Q. You looked at the foundation there of the furniture factory, the western foundation? Did you observe anything unusual about it?

"A. No; except curtain walls.

"Q. Are they unusual?

"A. No.

"Q. Are they not proper construction?

"A. Very good."

The plaintiff to maintain its contention, admitting that surface water is a common enemy for the diversion of which there is no liability, claims that under the facts here shown the defendant is liable under the rule which prevails in Virginia. He claims that the defendant in the construction of its building has exercised its rights in an unnecessary, unreasonable and careless manner.

■ It was conceded during the trial that there would be no contention that the defendant had obstructed or diverted water flowing in a defined channel, but only surface waters. That there was no well-defined chan-

nel on the defendant's lot is apparent. The plaintiff seeks to recover upon the averment that the defendant so constructed its building as to impound the surface water illegally. The evidence, however, shows that the defendant has simply constructed its building in the usual method. The foundation walls, of course, obstruct the natural flow of the surface water. Apparently the only way that this could have been avoided would have been to construct a culvert under its building, or to leave openings in the foundation walls so that the water of which the plaintiff complains could have continued to drain over the defendant's comparatively level lot. Both buildings divert the rainfall from continuing to flow over these lots and through the natural depressions, but each owner has exercised its rights and has not violated any legal right of his neighbor. To hold that neither could build over this comparatively level area in the usual way, without subjecting itself to an action, would destroy the rule that surface water is a common enemy which each owner must fight as best he can. The case can be easily distinguished from those relied on. Here there is no evidence that any water is cast upon the premises except that which falls either upon the plaintiff's own lot or that of the defendant.

While there may be expressions in the cases cited which, when quoted without reference to the facts of the particular case or the context, may seem to support the contention of the plaintiff, we think that each of them can be easily distinguished. For example, in none of them has the mere construction of a building upon one's own lot been held to constitute any actionable injury. We do not mean to intimate that a case may not arise when the negligent erection of such a building may support an action.

For example, in *Norfolk & Western Ry. Co.* v. *Carter*, 91 Va. 587, 22 S. E. 517, the injury was caused by the construction of a railroad embankment on its right of way where the roadbed had been built across a valley, through which large quantities of surface water had theretofore naturally drained; and it was held that the failure to provide proper culverts for the escape of surface water so impounded was actionable. In that case, however, Judge Riely was careful to say, in conceding the right of every owner of land to protect himself against surface water, that this right "may not be exercised wantonly, unnecessarily, or carelessly; but is modified by that golden maxim of the law, that one must so use his own property as not to injure the rights of another. It must be a reasonable use of the land for its improvement or better enjoyment, and the right must be exercised in good faith, with no purpose to abridge or interfere with the rights of others, and with such care with respect to the property that may be affected by the use or improvement as not to inflict any injury beyond what is necessary. Where the exercise of the right is thus guarded, although injury may result to the land of another, he is without remedy."

In *Cook* v. *Seaboard Air Line Ry. Co.*, 107 Va. 32, 57 S. E. 564, 10 L. R. A. (N. S.) 966, 122 Am. St. Rep. 825, the injury complained of was not from surface water but by diverting the course of a stream from its natural channel. Of course, this has no application to this case, which merely involves surface water which fell upon the lots of the plaintiff and defendant.

In *McGehee* v. *Tidewater R. Co.*, 108 Va. 508, 62 S. E. 356, the qualified rule enforced in the *Carter Case* is thus expressed: "The qualified rule of the common law in this State with regard to surface water, in a case

such as we are considering, imposes upon the lower land owner in the betterment or protection of his own property, the duty of exercising his rights, not wantonly, unnecessarily, or carelessly, but in good faith and with such care as not to needlessly injure the upper owner." The injury there was the failure to construct proper culverts under a railroad embankment spanning a valley, and closing it.

In *Town of Farmville* v. *Wells*, 127 Va. 528, 103 S. E. 599, the town had raised the grade of the street above the level of an abutting lot and filled up a gully, which some of the witnesses described as three or four feet deep and five or six feet wide, without making any adequate provision for the surface water which had theretofore drained through this well defined channel, and of course this has no application to the facts of this case.

In *Raleigh Court* v. *Faucett*, 140 Va. 126, 124 S. E. 433, the injury was also caused by the building of a street and raising the grade so as to obstruct the natural flow of water, without any adequate provision to take care of it by culverts, or otherwise.

The defendant here has not changed the natural grade or contour of the land, but only exercised its right to build upon its lot in the usual and customary way. The plaintiff has exercised its corresponding right to build upon its own lot in the usual and customary way. The burden was upon the plaintiff to show that the defendant has so carelessly and recklessly constructed its building as to inflict needless and unnecessary injury which could have been avoided by the exercise of ordinary care. The water here referred to is surface water, which has never flowed over the defendant's lot in any fixed or well-defined channels having beds and banks, but has only flowed over it

along the natural contour or shallow depressions of the land from higher to lower levels. This being true, the burden was upon the plaintiff to show that the injury suffered by the erection of the defendant's building was needlessly and negligently inflicted. In this it has failed. The plaintiff's obligation to provide a better outlet for this surface water is at least as great as that of the defendant.

*Affirmed.*